JOHN W. HOWES & another *vs.* NATHAN W. GRUSH.

Barnstable.   March 24, 1880. — April 4, 1881.   COLT & FIELD, JJ., absent.

In an action for tearing away the plaintiff's dam, it appeared that the entire township, where the land on which the dam had been built was situated, belonged, between two and three centuries ago, to the town, and that the deeds put into the case by the plaintiff were dated within twenty years before the date of the writ. *Held*, that the defendant was not entitled to a ruling that the plaintiff must show either a title in his grantors from the town, or a title by adverse possession.

Where there are many propositions of law and fact involved in a case, and a number of requests for instructions presented, the judge may disregard the

words of the requests, and state the law applicable to the facts in his own mode and in his own order; and he is not required to state principles of law, even if correct and asked for, unless the condition of the case requires it.

It is within the power of the Legislature to authorize such a use of a stream which is not navigable as will wholly destroy a public fishery.

In an action by the owner of a cranberry meadow against a fish committee of a town, for tearing away the plaintiff's dam, built, under the provisions of the St. of 1866, c. 206, across a stream not navigable, the defendant asked the judge to rule that, if the plaintiff could have constructed his dam or meadow so that his use of the water would not interfere with or injure a public fishery, he was bound to do it, and, if he did not, the committee had the right to reduce the dam to the point necessary to avoid such interference or injury. The judge declined so to rule; but instructed the jury that it was the duty of the plaintiff to use reasonable care, skill and prudence in building and maintaining his dam, in the preparation, by way of grading or otherwise, of his meadow before it was overflowed, and in raising and drawing off the water, so as to do the least injury to the fishery consistent with a reasonable exercise of his right to construct a dam, giving full instructions as to the meaning of the words "reasonable care, skill and prudence;" and that, if the plaintiff so exercised his right, and drew off the water at a proper time and only in a manner necessary for the cultivation of cranberries, the plaintiff was not responsible for injury to the fishery by reason of the spawn of the fish being deposited in shallow water on the meadow and injured by the drawing off of the water; and that, upon such a state of facts, the defendant had no right to remove the dam. *Held*, that the defendant had no ground of exception.

In an action by the owner of a cranberry meadow against a fish committee of a town, for tearing away the plaintiff's dam, built, under the provisions of the St. of 1866, c. 206, across a stream not navigable, the defendant requested the judge to rule that, if the dam was built, without permission of the town, on land of the town, or against a bridge forming part of a highway, or on land of the town, or under the bridge, the defendant had the right to remove it. The judge declined so to rule, but instructed the jury that the plaintiff had no right to build his dam in the highway, with or without the consent of the town, nor to build it on land of the town without the consent of the town; and that, if it was so built, the defendant had the right to remove it. *Held*, that the defendant had no ground of exception.

In an action by the owner of a cranberry meadow for the removal of his dam, the jury were instructed not to regard the injury caused by frost and insects, after the date of the writ, as distinct and independent grounds of damage, but that the true measure of damages was the diminution in value of the land for cranberry culture caused by the act of the defendant. *Held*, that the defendant had no ground of exception.

LORD, J.   This case was submitted to us upon briefs, and the nature of some of the questions presented by the defendant's counsel leads us to doubt whether he has not failed to raise the questions he desired.

The action is against the defendant for tearing away the plaintiffs' dam, erected by them for the purpose of flowing their cranberry meadow. The plaintiffs contended that one end of

their dam, upon one side of the stream, was upon their own land, and that the other end of the dam was upon land of one Whelden by whose consent the plaintiffs had erected it. The defendant contended that the land upon both sides of the stream upon which the dam was built was the land of the town of Yarmouth. By the bill of exceptions it appears that " the defendant offered evidence, and it was admitted by the plaintiffs, that the entire territory of the town of Yarmouth by the Plymouth Colony Court vested in certain proprietors, and afterwards, by a merging of said proprietary in the town, became the property of said town of Yarmouth, and the defendant contended that the land upon which said dam was erected, it being within the town of Yarmouth, was the property of said town, but offered no other evidence except as above admitted." " The plaintiffs offered in evidence certain warranty deeds purporting to convey the land on which said dam was erected, the last of said deeds being to the plaintiffs, and all said deeds, including the deed under which the plaintiffs contended that said Nehemiah B. Whelden was an owner, were executed and delivered within twenty years before the bringing of this action." And the defendant, in his eleventh request for instruction, asked the presiding justice to rule that " The warranty deeds making the plaintiffs' title give them no title as against the town of Yarmouth unless their grantors, or those whose title they had, are shown to have had their title from the proprietary of Yarmouth, or from the town of Yarmouth, or adverse open and peaceable possession of the premises for twenty years at least before the acts of the defendant complained of." The jury were instructed " that the warranty deeds introduced by the plaintiffs, if they embraced the land now claimed by the plaintiffs and appropriated by them to the cultivation of cranberries, would together with the fact of continued and uninterrupted occupation of the premises by the plaintiffs under said deeds, and uncontrolled by any other evidence except the admitted fact that the land aforesaid originally belonged to the town of Yarmouth, or to the proprietors of that town, authorize the jury to find the plaintiffs' title valid."

The claim of the defendant is, that, because it was agreed that some time between two and three centuries ago the town of

Yarmouth became seised of all the land in the township, and with no other evidence either of use, improvement or enjoyment of the same at any time since, those who are now holding estates under a succession of warranty deeds not bearing date more than twenty years ago must show a direct grant to themselves or their grantors from the town of Yarmouth, or must show an open, peaceable, continuous adverse possession for a term of twenty years. This question having been raised, we are required to decide it, but we are not required to say more than that the claim is wholly groundless.

There were ten other requests for instruction, none of which was given in the terms in which requested. General instructions were given, which the presiding judge intended as all that were appropriate to the case, and as including all embraced within the defendant's requests to which the defendant was entitled. The stream upon which the plaintiffs' dam was erected was not navigable, and the dam was erected under the provisions of the St. of 1866, c. 206. The stream was one up which alewives were accustomed to pass in the spring to cast their spawn. The defendant was one of the fish committee of the town of Yarmouth, and the subject matter of the controversy between the parties was whether the flowing of the cranberry meadows for the protection of the cranberry crop was destructive of or injurious to the alewife fishery; and if so, whether it gave the right to the defendant to tear down the dam at the time and in the manner he did.

The defendant contended that the plaintiff should have made his meadow practically level, and, being made so level, he contended that it was not necessary for the protection of the cranberry culture that the dam should be any higher than sufficient barely to cover the meadow with water, and that it should not be raised to such a height as that the fish would go upon the meadow at all to cast their spawn; that they would avoid water less than six inches deep, and would not cast their spawn upon a meadow if no more covered with water than was necessary for the cranberry culture; and that, as it was usual to let the water off of cranberry meadows before the spawning season was wholly over, there was danger of the destruction of the spawn if the water was raised so high as to induce the fish to deposit their

spawn there, because of the inability of the young fish to get to the sea; while no harm would come to the fishery if the spawn were cast in the stream, or in such places as not to be liable to injury by the drawing off of the water at the usual time. These various propositions and claims were controverted by the plaintiffs, who contended that their meadow was reasonably and properly adapted to the cranberry culture, that their dam was properly constructed, and that they exercised their rights with due regard to the rights of the public in the fishery, and that, even if they did not, the defendant was not authorized to destroy the dam at the time and in the mode he did. Embraced within the ten prayers for instruction were several specific requests, each of which was based upon some insulated and controverted fact. Several of them were incorrect in law, and some of them were correct as propositions of law. Under such circumstances, it is not the duty of a presiding judge to instruct *seriatim* upon the various propositions, either as a part of his charge or before or after the charge. It rests within his discretion to present the law of the case in such manner and in such order as his own judgment shall dictate, and when a great variety of propositions is submitted by counsel, presenting many alternatives, the presiding judge may disregard the words of the requests, and the order in which they are presented, and may, in his own mode and in his own order, state to the jury the law applicable to the facts. If he thus states the law accurately, and all the law which the evidence in the case required to be stated, he will have done his whole duty. He is not required to state principles of law, even if correct and asked to do so by counsel, unless the condition of the case requires it. *Drake* v. *Curtis*, 1 Cush. 395, 414, 416. *Peterson* v. *Farnum*, 121 Mass. 476, 485. This leads to the inquiry whether the presiding judge stated the law accurately, and whether he stated all the principles of law which the case required.

The Legislature has seen fit to give to the owners of cranberry meadows the same rights to erect dams and flow their meadows that had been long enjoyed by owners of mill sites. It is undoubtedly within the power of the Legislature to authorize such a use of a stream as shall wholly destroy a public fishery; and it is probably matter of common knowledge that the Legislature

has authorized the construction of dams with such fishways as no fish has ever passed over. There is no individual property in the fish which pass from the sea into rivers to deposit their spawn; and so far as those fisheries may be deemed to be a public benefit, the Legislature has the entire power and control over them; it may foster and encourage them, even at the expense of other public interests, or it may make them subservient to what it deems more important public interests, or it may permit them to coëxist with other public interests, each having a proper regard to the rights and privileges of the other. *Commonwealth* v. *Essex Co.* 13 Gray, 239. *Central Bridge* v. *Lowell*, 4 Gray, 474.

The instructions asked for, in addition to the one already stated, were as follows: "1. The plaintiffs cannot recover in this action for damages resulting from a frost or ravages by worms that did not occur until after the bringing of this action. Nor, under their declaration, for such damages whenever they happened. 2. If the plaintiffs could have so constructed their dam or cranberry bog as that their use of the water would not interfere with or injure the public fishery under the charge of the fish committee of the towns of Yarmouth and Dennis, they were bound so to do; and, if they did not, said committee had the right to reduce the plaintiffs' dam to the point necessary to avoid such interference with or injury to said fishery. 3. If the plaintiffs' dam was constructed upon the land belonging to the town of Yarmouth without permission from said town, or if, without such permission, said dam or its abutments were built against, or so as to be supported by, a town bridge forming a part of a highway, or if, without such permission, the plaintiffs' fishway was constructed on said town's land or under its bridge, the defendant had the right to remove said dam or fishway interfering with or causing damage to a public fishery existing in the stream across which said dam was built. 4. If the plaintiffs by their dam so raised the waters of the stream leading from the pond as to cause the fish to spawn in such places about the shores of the pond, as that, when the plaintiffs let the water off, the spawn would be destroyed to an extent that would practically destroy a public fishery existing in the stream, the defendant would have the right to reduce the height

of the dam sufficiently to prevent such destruction. 5. The plaintiffs must have built their dam on their own land, or on the land of others by permission of the owners, or the defendant had the right to remove the same. 6. It is not by express legislation alone that mill-owners and owners of cranberry bogs constructing dams are bound to take all necessary precautions against destroying an existing public fishery. It is an implied limitation, upon the right to flow by either, that such public fishery shall be protected from destruction or great injury. 7. The right to have the migratory fish pass up and down a stream is involved in the right to preserve the fishery from destruction, and neither mill-owners nor cranberry-growers have the right to destroy the fishery, although it may be impossible for them to use the waters of a stream without such destruction. 8. The right to have the public fisheries exist is a public right, and though the Legislature has enacted no laws for the protection of spawn of migratory fish, yet, if the building of a dam will work the destruction of the spawn, and so practically destroy such fishery, parties constructing a dam across a stream must guard against such destruction of the spawn, and, if they do not, it is the right of officials such as this defendant to do so, and to tear down or reduce the height of said dam if necessary to that end. 9. Owners of cranberry lands have no right to use the waters of a stream in which a public fishery exists, for irrigating or flowing their lands, if such use will destroy such fishery. 10. It is not a reasonable use of the waters of a stream in which a public fishery exists, to use such waters so as to destroy such fishery."

The bill of exceptions then recites that "The court declined to instruct the jury in the language of the foregoing requests of the defendant, but, having explained the provisions of law respecting fisheries and the erection of dams across non-navigable streams by the owners of land appropriated to the cultivation of cranberries, the court did instruct the jury that it was the duty of the plaintiffs in this case, not only to build and maintain suitable fishways in connection with their dam, but that it was also their duty to use reasonable care, skill and prudence in building and maintaining their dam, in the preparation, by way of grading or otherwise, of their land before it

was overflowed, and in raising and drawing off the water, so as to do the least injury to the fishery or its owners consistent with a reasonable exercise and enjoyment of the rights of the plaintiffs under the statute giving to the owners of land appropriated to the cultivation of cranberries authority to construct dams. Full and appropriate explanations, not excepted to, were given in this connection of the meaning of the terms 'reasonable care, skill and prudence,' and illustrations of the rule of law that every one is required to use his own rights so as not unnecessarily to injure or interfere with those of another. And the court further instructed the jury that, if the plaintiffs exercised that reasonable care, skill and prudence in all respects as before stated, they would not be responsible for damage resulting to the fishery by reason of the spawn of the fish being deposited by the fish in the shallow water over said cranberry meadow or land, and while the spawn might thus be exposed to injury or destruction when the water should be drawn off, if the same was drawn off at the proper time and only in a manner necessary for the cultivation and growth of cranberries on said land or meadow; and that upon such a state of facts the defendant would have no right to remove the plaintiffs' dam."

The jury were also instructed "that the plaintiffs had no right to build their dam in the public highway, either with or without the consent of the town, nor would they have the right to build their dam on land of the town without its consent; and that if the dam was built within the limits of the highway or on land of the town without its consent, the defendant, acting as the authorized agent of the town, would have a right to remove the dam, and would not be liable therefor to the plaintiffs in this action; and that if any part of the plaintiffs' dam was in the highway or on land of the town without its consent, the defendant would in like manner have a right to remove the part of the dam so standing in the highway or on the town's land. But that if the plaintiffs built one end or part of their dam on Whelden's land with his consent, though there was no other evidence of a lease from Whelden to the plaintiffs, that would not authorize the jury to find that the dam was wrongfully constructed, or that the defendant for that reason had a right to remove it."

Evidence was given, during the trial, as to the beneficial effect or otherwise of overflowing with water cranberry lands, so as to protect such lands from the injurious operation of frost and insects; and various witnesses engaged in the cranberry culture gave their estimate of the per cent of depreciation in the crop on the cranberry lands or meadows of the plaintiffs for the year 1878 by being deprived of such overflow of water. Evidence was also introduced, and not excepted to by the defendant, that the cranberries on the plaintiffs' land were injured, after the removal of the dam by the defendant, by frost and insects, in the year 1878, but some weeks after May 9, the date of the plaintiffs' writ. There was no evidence about the condition of the dam in the year 1879, or whether the land of the plaintiffs was or was not overflowed.

Upon this state of the evidence the court instructed the jury "that they could not regard the injury caused by the frost and insects after May 9, the date of the plaintiffs' writ, as distinct and independent grounds of damage, but that the true rule of damage in this case, if the jury should find for the plaintiffs, would be to determine, in view of all the evidence in the case, how much less the value of the plaintiffs' land for cranberry culture was, for the year 1878, by reason of the dam having been removed by the defendant at the time he made the removal, than it would have been if the dam had not been removed and the water had been drawn off by the plaintiffs at the proper time and in the proper manner, as stated in the former part of these instructions to the jury."

These instructions were adapted to the evidence in the case, and were sufficient. *Gould* v. *Boston Duck Co.* 13 Gray, 442. *Newhall* v. *Ireson,* 8 Cush. 595. *Elliot* v. *Fitchburg Railroad,* 10 Cush. 191. *Hinckley* v. *Nickerson,* 117 Mass. 213.

The defendant certainly has no ground of complaint. Upon an examination of the pleadings, it is quite evident that the parties tried their cause upon what either of them deemed essential to the merits of the controversy, without special reference to the issues raised by the pleadings; and the matter most strenuously contested by the defendant, to wit, the danger of injury to the spawn of the fish by reason of the possibility of the water being drawn off too early, is not raised by the

answer; but, as the parties have elected to try all the questions which might be raised by any answer, we have considered all the points thus raised upon their merits; and, upon the several special requests, a reference to the instructions as given will show that they were quite sufficiently favorable to the defendant. It is to be presumed that, when the court explained the provisions of law respecting fisheries and the erection of dams across navigable streams by the owners of land appropriated to the cultivation of cranberries, and instructed the jury that it was the duty of the plaintiffs, not only to build and maintain suitable fishways, and to use reasonable care, skill and prudence in building and maintaining a dam, and in the preparation of their land for that purpose by grading, with full and appropriate explanations of the meaning of the terms " reasonable care, skill and prudence," and illustrations of the meaning of the rule which requires every one so to use his own as not to injure another, the instructions were correct, no exception having been taken to them; and the language of the court, that the jury could not regard the injury caused by frost and insects after the date of the plaintiffs' writ as distinct and independent grounds of damage, was quite favorable for the defendant. The jury could not regard them as distinct causes of action; but if they were the natural and necessary consequences of the wrongful act, he was responsible for them, even although they occurred subsequently to the date of the writ. We are satisfied that the defendant has no cause of complaint, and that his exceptions must be                                         *Overruled.*

*J. M. Day & H. P. Harriman*, for the defendant.

*G. Marston*, for the plaintiffs.

===

## MEMORANDUM.

ON the eleventh day of April 1881, the Honorable AUGUSTUS L. SOULE resigned the office of justice of this court, which he had held since the twenty-seventh day of March 1877.

MEMORANDUM.

On the eighteenth day of April 1881, the Honorable CHARLES DEVENS, late Attorney General of the United States, was appointed a justice of this court, in place of Mr. Justice Soule resigned, and took his seat on the bench on the nineteenth day of the same month, at the term of the court then held at Lowell in the county of Middlesex.