EDWARD L. McFADDEN *vs.* THE BANCROFT HOTEL
CORPORATION.

Norfolk.    November 9, 1942. — January 26, 1943.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Negligence*, Hotel, Intoxicated person, Contributory, Assumption of risk.
*Practice, Civil*, Ordering verdict.

A finding of negligence of the defendant was warranted in an action
against the proprietor of a hotel by a guest for injuries sustained when
the plaintiff without provocation was assaulted by another guest, who
was intoxicated, at a drinking party in the crowded grill room of the
hotel, where there was evidence that agents and employees who had
been hired by the defendant to preserve law and order failed to exer-
cise ordinary care to prevent such assault after observing quarrelsome
conduct on the part of the intoxicated guest for a considerable time
before the assault.

Evidence of the conduct of one who, accompanied by his wife, entered a
crowded grill room of a hotel where on an evening of a convention a
drinking party was in progress, did not require a ruling as a matter of
law that he was precluded from maintaining an action against the
proprietor of the hotel for injuries sustained when, owing to a failure
of the proprietor to exercise care for his protection, another guest,
who was intoxicated, assaulted him without provocation.

Exceptions by a defendant to a denial of his motion that a verdict be
ordered in his favor at the trial of an action in contract or tort with a
declaration in three counts, and to a refusal to enter a verdict in his
favor under leave reserved after a general verdict for the plaintiff had
been recorded, were overruled where there was evidence warranting a
verdict for the plaintiff on at least one of the counts.

TORT OR CONTRACT.    Writ in the Superior Court dated
June 26, 1937.

The declaration was in three counts, the first two being
in tort and the third in contract. The allegations of the
first count were in substance that the plaintiff, while a
guest of the defendant at its hotel, was viciously assaulted
by reason of negligence of the defendant, its agents, servants,
and employees "in failing to exercise that degree of care
which it owed him as a guest." The allegations of the

second count were merely that the assault was by reason of negligence of the defendant, its agents, servants, and employees.

The case was tried before *Morton*, J.  The defendant moved that a verdict in its favor be ordered.  The motion was denied.  The jury returned a general verdict for the plaintiff which was recorded subject to leave reserved.  A motion by the defendant that a verdict for it be entered under leave reserved was denied.  The defendant alleged exceptions.

*J. M. Graham*, for the defendant.

*A. R. Sisson*, (*W. J. Lee* with him,) for the plaintiff.

Cox, J.  A military organization held its annual convention in Worcester in June, 1936, with headquarters in the hotel that the defendant operates.  The convention opened on the twenty-sixth and in the early evening of the twenty-seventh, the plaintiff, while in the grill room of the hotel, was assaulted by one Cunningham, a guest of the hotel, who had arrived on the twenty-fifth.  The grill room is about ninety by ninety feet with a normal seating capacity of one hundred and fifty, which had been reduced for the convention period to one hundred.  The bar is thirty-two feet long.  It could have been found that in preparation for the convention, the defendant hired six private detectives, and six local police officers, and that at the time of the assault, at least five of them were stationed around the grill room.  The superintendent of detectives of the Worcester police force was also present, "all over the hotel."  On Saturday evening there was a capacity crowd of one hundred fifty people in the grill, which, besides filling every seat, was crowded around the bar and back into the space that had been created by the removal of tables.  No food was being served.  The crowd was noisy and drinking.

The detectives had been instructed that if there were any fights, they were to "break them up"; that they were to assist in keeping things so that there would be no trouble; "undesirables, we asked . . . to leave and people who were making noise, we would quiet . . . down; and the general job was to keep trouble from brewing around the place."

Men were stationed in different places, "and one of the places was the grill room."

Cunningham, the admitted assailant, arrived at the hotel on Thursday, the twenty-fifth, and engaged two rooms so that he could do some entertaining. Much of the time through Thursday, Friday and Saturday he acted as bar tender in his suite, drinking occasionally when he was serving "the boys," and on Friday he dispensed a case of liquor, "exactly three hundred fifty-four drinks." He started to entertain again on Saturday, but did not have many visitors. The convention parade was on Saturday afternoon. Cunningham was described as being about six feet in height, and as weighing two hundred pounds, "a pretty big man," and as wearing a white gabardine suit on Saturday evening. One witness, whose attention was attracted to him in the grill room by reason of his white suit, testified that Cunningham was "a pretty big man, and was kind of strutting around and took up a good deal of room." The defendant's assistant manager observed him in the grill room about an hour before the assault and for an appreciably long time. The grill room head waiter saw him, as did one of the detectives, who observed him in his white suit moving about the room, and who testified that Cunningham had been drinking. He also was observed by the superintendent of detectives before the assault.

The plaintiff went to the grill room with his wife about 5:45 P.M. They were taken to a table in the center of the room and ordered drinks. Each had one drink only. About twenty minutes after they arrived, the plaintiff noticed Cunningham, who was standing at a table about fifteen feet away, "hollering, and [doing] a lot of cursing . . . swearing at someone." He could be heard "above the rest." One of the men at that table got up and said something to Cunningham who pushed him back in his seat saying, "Sit down you son of a gun." The man stayed down. This incident was observed by one of the detectives. When this occurred, two waiters came running over and "caught Mr. Cunningham" and there was talk, and two men in civilian clothes also came over and talked for a few minutes. The

plaintiff thought there was going to be a fight.  After this affair, Cunningham was seen walking around, "swaying around" and going from table to table.

About an hour after the first incident, Cunningham was seen at another table arguing with a man.  One of the men at the table jumped up and, when he did, Cunningham "'pulled back to strike him. . . . [The witness] thought he was going to, but before he could some waiters come [sic] up and grabbed him.'  Someone came up and grabbed his hands while they were in back of him; . . . the waiters were right there as soon as he pulled back his arm, and before he had time to let it go they grabbed him; . . . [the witness] thought he was going to punch the man."  The waiters "broke that up."  The plaintiff, who observed this incident, testified that, when he next saw Cunningham, he was walking toward him and was very close to him; that he looked up at Cunningham, and "That is the last . . . [he knew] until . . . [he] came to in the hospital."  He was sitting in his chair when Cunningham hit him in the eye and knocked him to the floor.  The plaintiff was wearing glasses and "didn't even open his mouth to Cunningham" before the assault.  This incident was observed by one of the detectives.

Cunningham admitted that he had had a "few drinks" and that what he meant by saying that he was sober to a degree was that he had had a few drinks.  There was evidence that he was "not sober," and that he had been drinking.  The defendant was licensed to sell intoxicating liquors.

The only exception is to the denial of the defendant's motion for a directed verdict.  To a special question, the jury answered that the purpose for which the officers and detectives were at the hotel was to preserve law and order.

It was the duty of the defendant to exercise reasonable or ordinary care for the safety of the plaintiff in the circumstances.  It was not an insurer of his safety.  Some of the cases seem to indicate that the duty of a hotel keeper is to protect his guests from assault, and that he owes the same high degree of care to his guests that a common carrier

owes to his patrons. Other cases hold the rule to be that
the hotel keeper must use ordinary care. But it seems to
be the general rule that the landlord owes the guest some
duty and must furnish some protection. *Gurren* v. *Casper-
son*, 147 Wash. 257. *Sidebottom* v. *Aubrey*, 267 Ky. 45.
*Peck* v. *Gerber*, 154 Ore. 126. *Rommel* v. *Schambacher*, 120
Penn. St. 579. *Mastad* v. *Swedish Brethren*, 83 Minn. 40.
*Curran* v. *Olson*, 88 Minn. 307. *Rahmel* v. *Lehndorff*, 142
Cal. 681. *De Wolf* v. *Ford*, 193 N. Y. 397. *McKeon* v.
*Manze*, 157 N. Y. Sup. 623. Compare *Peter Anderson &
Co.* v. *Diaz*, 77 Ark. 606. See *Frewen* v. *Page*, 238 Mass.
499, 504; *Kelley* v. *Goldberg*, 288 Mass. 79, 81. What
constitutes ordinary care varies with the circumstances of
the given case. It is unnecessary to determine the precise
extent of the rule, for we are of opinion that the jury could
have found that the defendant, in the circumstances, did
not exercise ordinary care for the plaintiff's protection,
and we come to this conclusion without the necessity of
ascribing to the defendant that high degree of care that a
common carrier owes to its passengers, not only as to dan-
gers arising from the mechanics of transportation, but also
as to annoyance, violence or harm that may be reasonably
expected from other passengers. See *Holton* v. *Boston
Elevated Railway*, 303 Mass. 242, 244, and cases cited.

The jury could have found that the defendant's agents,
some of whom were present for the very purpose of preserv-
ing law and order, not only could have seen, but, in fact,
did see the activities of Cunningham prior to the assault
on the plaintiff. The jury might have concluded that, in
the performance of the duty resting upon the defendant,
Cunningham should have been removed from the grill room
at some time before the assault was committed. They
might have concluded that Cunningham, conspicuous as he
was and acting as he was, should have been required to sit
at some place where, perhaps, he could be under a closer
surveillance of the officers of the law. Without doubt the
jury, when hearing the evidence, had a much better oppor-
tunity than this court to reproduce what went on in that
grill room for an hour or so before the plaintiff was assaulted.

The charge to the jury is not reported.  It must have been satisfactory to the parties, apart, of course, from the defendant's contention that the plaintiff had no case.  The case is not too strong on the question of the defendant's negligence, but we cannot say that, as matter of law, there was no evidence to take the case to the jury on this point.  There was no occasion for the defendant to warn the plaintiff of things that he could see for himself.  Whether the plaintiff saw that Cunningham had been drinking or was not sober does not appear.  The defendant's duty, however, did not consist merely of an obligation to warn the plaintiff.

The defendant contends that the plaintiff assumed the risk of what happened to him.  Assumption of risk was not pleaded by the defendant, but contributory negligence was.  It is unnecessary to go into the relationship or difference, if any, between voluntary assumption of risk and contributory negligence.  See *Hietala* v. *Boston & Albany Railroad,* 295 Mass. 186, 189–191.  However the question is presented, it was to be determined by the jury.  It is true that the plaintiff testified that his purpose in going to the grill room was to participate in the "good time," that he expected that there was going to be "a lot of drinking and a lot of hilarity at the party and that was what he went there for and he expected, the same as the others, to participate in it."  This is not saying, however, that he expected, or should have expected as a reasonable person, that, as the jury could have found, while sitting at the table wearing glasses, a man weighing two hundred pounds would come to him and knock him out of his chair, without any provocation.  It is apparent that preparations were made for a drinking party.  No food was sold, and the plaintiff went to the grill room for the purpose of engaging in that party.  He had had but one drink.  In considering his conduct, the plaintiff is to be judged by the conduct of the ordinary man similarly situated.  It cannot be said, as matter of law, that his conduct prevents him from recovering.

The motion for directed verdict was general.  There were three counts in the plaintiff's declaration, and the verdict for the plaintiff was a general one.  There was sufficient

evidence to support the verdict on the declaration. *Pelton* v. *Nichols*, 180 Mass. 245. *Commercial Wharf Corp.* v. *Boston*, 208 Mass. 482, 487. Compare *Kelly* v. *Citizens Finance Co. of Lowell, Inc.* 306 Mass. 531, 534.

*Exceptions overruled.*