MARK F. QUIGLEY *vs.* WILSON LINE OF MASSACHUSETTS, INC.

Suffolk. October 10, 1958. — November 20, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Negligence*, Obnoxious person, Carrier, Ship. *Carrier*, Of passengers.

In an action against a common carrier to recover for injuries sustained by the plaintiff while a passenger aboard the defendant's ship as a result of an unprovoked assault on him by a belligerent and intoxicated fellow passenger whom, shortly before, police officers employed by the

defendant to maintain order on the ship had left unattended and without any surveillance on an upper deck after forcibly escorting him from the bar on the deck below, evidence warranted findings that the assault on the plaintiff was both foreseeable and preventable and that the defendant was negligent.

TORT. Writ in the Superior Court dated July 26, 1954.
The action was heard by Donahue, J.
The case was submitted on briefs.
John J. McNaught, for the defendant.
Sydney M. Davis & Isaac Gordon, for the plaintiff.

RONAN, J. This is an action of tort to recover for injuries sustained by the plaintiff, while a passenger aboard the defendant's ship, as a result of an unprovoked assault on him by an intoxicated fellow passenger. The case was tried before a judge, sitting without jury. The defendant excepted to the refusal to give three requests.[1]

The defendant was, on June 26, 1954, the date of the alleged tort, the owner and operator of the vessel "MV Sea Belle," a common carrier of passengers for hire, manned and controlled by the defendant's employees and agents. On the date in question, the vessel was carrying passengers between Nantasket and Boston and approximately one thousand passengers were aboard. On the lower deck of the vessel, the defendant operated a bar at which intoxicating beverages were sold and which was tended by five bartenders. There were also facilities for dancing. In addition to the crew, a detail of three police officers of the Boston police department had been employed by the defendant for service aboard the vessel to maintain order and "to prevent annoyance or injury to passengers by unruly or obnoxious persons."

The plaintiff, after paying for his passage, went aboard at Boston at about 8:30 or 8:45 in the evening of June 26,

[1] These requests were: "4. There is no evidence which would warrant a finding that at the time of injury to the plaintiff, the relationship of master and servant existed between the defendant and any of the police officers aboard the defendant's vessel." "6. The evidence is insufficient as a matter of law to warrant a finding that the defendant, by its servants, was negligent." "7. On all the evidence the finding must be in favor of the defendant."

1954, in company with his wife, her brother, one O'Brien, and O'Brien's wife. The plaintiff and his party danced or walked about the deck of the vessel until it reached Nantasket. There it was to remain until 10:30, when the return trip to Boston was to commence. O'Brien and his wife went ashore. The plaintiff and his wife stayed aboard ship, and when the return trip to Boston began, they were in the saloon section of the vessel, one deck below the main deck, where the bar was located.

Meanwhile at Nantasket the vessel had taken on additional passengers for the return trip to Boston. Two of these passengers were one Bentley and one Rumbos. Their arrival was noticed by Patrolman Sanden, one of the police officers on board, for their demeanor indicated to the officer that they were likely to be sources of trouble. These two passengers went forthwith to the saloon deck and its bar. Soon they were drunk: staggering in their movements, slurred of speech, incoherent, belligerent, and abusive. A bartender refused to serve them.

Mrs. O'Brien was near by. When Bentley and Rumbos made obscene and insulting remarks about her, O'Brien came to her rescue, to be met by a blow from Bentley as he approached. O'Brien grappled with Bentley, Rumbos joined in, and three or four others stepped in to separate the combatants. Two police officers arrived and, upon investigation, were told by a bartender that Bentley and Rumbos were the troublemakers and that he wanted them ejected. The plaintiff and his wife took no part in the melee, and did not see the blow struck.

The officers took Bentley and Rumbos by the backs of their coat collars and forcibly escorted them to an upper deck. They struggled, but despite their resistance they were led out on the starboard quarter toward the stern of the vessel and were seated upon long benches there. For five or ten minutes they remonstrated and struggled with the officers against being seated. Finally they were told that if they did not see fit to behave, the officers would "lock them up for the night." The officers then left Bentley

and Rumbos seated alone, unattended and not under surveillance, despite their intoxicated conditions.

Shortly thereafter the plaintiff, his wife, and Mr. and Mrs. O'Brien proceeded from the lower deck to an upper deck, the plaintiff leading the way, his wife behind, and the O'Briens in the rear. On reaching the upper deck, the plaintiff turned left and had taken five or six steps when Rumbos rushed at him and felled him with a blow to his right eye, causing serious injury. Bentley and Rumbos were taken into custody and booked at the police station for drunkenness and assault and battery when the vessel reached Boston.

It is the long settled law of this Commonwealth that a common carrier owes to its passengers the highest degree of care in the anticipation and prevention of violence from its employees, other passengers, and even strangers, as is consistent with the nature and operation of its business. The test is foreseeability of harm, *Kuhlen* v. *Boston & No. St. Ry.* 193 Mass. 341, 346, *Glennen* v. *Boston Elev. Ry.* 207 Mass. 497, 498, *Harrison* v. *Boston Elev. Ry.* 316 Mass. 463, 464; but the carrier is not an insurer of the safety of its passengers, nor is it obliged by law to foresee and to guard against unlikely dangers and improbable harms. *Isenberg* v. *New York, N. H. & H. R.R.* 221 Mass. 182, 183. *Sack* v. *Director Gen. of Railroads,* 245 Mass. 114. *Pearson* v. *Director Gen. of Railroads,* 245 Mass. 158.

In this case there is ample factual basis to support the finding of the trial judge, implicit in his general finding, that the injury here was both foreseeable and preventable, and negligently permitted to occur. The facts are rather closely paralleled by those of *McFadden* v. *Bancroft Hotel Corp.* 313 Mass. 56, where the plaintiff was permitted to recover for injuries sustained in an unprovoked assault by an intoxicated patron of the defendant's grill room who, previous to the assault, had manifested quarrelsome tendencies. The standard of care required of the hotel keeper in the *McFadden* case was said to be that high degree of care required of common carriers, and the defendant could be found to have vio-

lated that standard despite its precaution of hiring twelve detectives and officers in advance of a convention. Here Bentley and Rumbos were left unattended and without any surveillance by officers whatever. Disorder with its attendant probability of injury to an innocent party was not unforeseeable.

The defendant contends that the police officers, performing, as they were, usual police functions and not having been given instructions by the defendant to govern the execution of those functions, were not the defendant's agents, but merely independent contractors. But the fact that their shipboard functions were for the same purpose as their duties on land, namely the preservation of law and order, is not in itself conclusive. Neither is the fact that they had not been instructed by civilian officers of the defendant's crew with respect to the mode of execution of their functions. "One may be a servant though . . . so much more skilled than the master that actual direction and control would be folly." *McDermott's Case*, 283 Mass. 74, 77. "The test of the relationship [of master and servant or agent] is the right to control. It is not necessary that there be any actual control by the alleged master to make one his servant or agent, but merely a right of the master to control." *Cowan* v. *Eastern Racing Assn. Inc.* 330 Mass. 135, 141. In the case last cited there was an order by the defendant's manager of a race track to the detectives to assault the plaintiff. In the *McFadden* case, the hired police officers were assumed to be agents of the defendant hotel corporation despite the fact that they were regular officers of a local police force.

The defendant's liability does not rest upon the status of the police officers it employed to maintain order but does depend upon a duty which is imposed by law upon the carrier, to anticipate that which is reasonably foreseeable and to prevent that which is reasonably preventable in the way of violent injury to its passengers. And it is therefore liable when it fails to afford to its passengers that protection to

which they are entitled by virtue of this obligation. *Bryant*
v. *Rich,* 106 Mass. 180. *Hayne* v. *Union St. Ry.* 189 Mass.
551. See also G. L. c. 159, § 95; *Jackson* v. *Old Colony St.
Ry.* 206 Mass. 477, 486; *Hull* v. *Boston & Maine R.R.* 210
Mass. 159; *Goddard* v. *Grand Trunk Ry.* 57 Maine, 202;
Williston, Contracts (Rev. ed.) § 1113. So also a common
carrier is liable for injuries caused by the negligence of its
hired officers where their negligence is a breach of the car-
rier's duty of vigilance in behalf of its passengers. Even if
the hired police officers in this case were acting as independ-
ent contractors, which we need not decide, the defendant
common carrier was not thereby relieved from its liability
for the negligence of those officers in not adequately pro-
tecting the plaintiff against a foreseeable risk. See *Smith* v.
*August A. Busch Co. of Mass. Inc.* 329 Mass. 615, 619–620.

*Exceptions overruled.*