JAMES P. KANE *vs.* FIELDS CORNER GRILLE, INC.

Suffolk.   November 7, 1960. — January 9, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& CUTTER, JJ.

*Negligence,* Obnoxious person, Tavern.  *Practice, Civil,* Charge to jury;
Judicial discretion; Requests, rulings and instructions; Exceptions:
whether error harmful, general exception; Argument to jury.  *Evidence,*
Of earning capacity, Descriptive words.  *Damages,* Earning capacity.
*Error,* Whether error harmful.  *Words,* "Highest degree of care."

In an action against the proprietor of a bar by a patron, a finding of
negligence on the part of the defendant toward the plaintiff was war-
ranted by evidence that after some minutes of boisterous conduct of
another patron, remarks by him against the plaintiff, "words back and
forth," loud talk, and "a lot of commotion," which was observed by the
bartender, there was an assault on the plaintiff by the other patron.
[641]

Taken as a whole, the charge to the jury in an action against the propri-
etor of a bar by a patron injured by an assault of another patron
properly stated the duty of the defendant as that of using reasonable
care in the circumstances for the plaintiff's safety, and the defendant
was not prejudiced by a reference in the course of the charge to use of
"the highest degree of care."   [641–643]

Upon an objection to a statement made by counsel in his argument to
the jury at the trial of an action, it was within the judge's discretion
to "take care of it" in his charge to the jury rather than immediately
at the time of the objection.   [644]

On the record of the trial of an action for personal injuries, there ap-
peared to be specific testimony by the plaintiff as to the amount of his
weekly earnings before his injuries, as well as evidence of the nature
of his work, so that a ruling was not required that there was no evi-
dence of an earning capacity of the plaintiff in such amount per week.
[645–646]

In an action against the proprietor of a bar by a patron injured when
assaulted by another patron, no error was disclosed by a general excep-
tion by the defendant to "that part of the charge referring to" G. L.
c. 138, § 69, where instructions as to that statute were justified on the
evidence and there was no specific request or objection by the de-
fendant respecting such instructions.   [646–647]

It was within the discretion of the judge, at the trial of an action against
the proprietor of a bar for personal injuries sustained by a patron
assaulted by another patron, to allow to stand the words "boisterous"
and "in an arrogant manner" used by witnesses in describing the con-
duct of the assaulting patron before the assault.   [647]

Kane v. Fields Corner Grille, Inc.

Tort. Writ in the Superior Court dated September 4, 1957.

At the trial before *Tomasello, J.*, there was a verdict for the plaintiff. The defendant alleged exceptions.

*Thomas D. O'Brien III*, for the defendant.

*Francis J. DiMento*, for the plaintiff.

Whittemore, J. 1. There was no error in denying the defendant's motion for a directed verdict. The jury could have found that the plaintiff sustained injuries on January 28, 1956, as a result of an assault by his cousin Robert O'Brien while the plaintiff, in a group which did not include O'Brien, was a patron in the defendant's bar in Dorchester. When O'Brien came into the bar he at once objected to the plaintiff's presence on "my corner," and continued remarks against the plaintiff for from ten to twenty minutes, acting boisterously, and saying after some time that he was "going to bodily throw someone out." There were "words back and forth"; loud talk; "a lot of commotion." The bartender heard and observed this but walked away when the plaintiff said that O'Brien was under age and "should be shut off because there was going to be trouble." O'Brien then immediately started yelling and charged the plaintiff's group with an ash tray in his raised hand, the plaintiff "got twisted off the stool," and O'Brien "landed" on him. On these facts a finding of the defendant's negligence was warranted. *McFadden v. Bancroft Hotel Corp.* 313 Mass. 56. *Quigley v. Wilson Line of Mass. Inc.* 338 Mass. 125.

2. There was no prejudicial error in the reference in the charge to "highest degree of care." The judge, adopting, it appears, language in the *Quigley* case (p. 128), said: "Now, as far as the tavern keeper is concerned, it's the duty of the person in control of a tavern or bar to exercise reasonable or ordinary care for the safety of a business visitor and to protect him from assault by other patrons and to use the highest degree of care in anticipation and prevention of violence by other patrons and even strangers as is consistent with the nature and the operation of the

business.    The tavern keeper, however, is not an insurer of the safety of his patrons, nor is he required by law to foresee and guard against unlikely danger and probable harm.    The test is 'foreseeable harm.'    And if the acts of an assailant could be foreseen, then the tavern keeper owed the guest or patron the duty to furnish him protection. That is what you are to determine in this case, whether the conduct of O'Brien, as testified to here — if you believe there was such conduct — whether that conduct was such that it might be foreseeable that he might cause injury to the patron Kane.''

The concept of ''highest degree of care'' is commonly stated in carrier cases where it reflects the circumstances of carrier control and the potentially serious consequences of an accident.    *Donahoe* v. *Boston Elev. Ry.* 214 Mass. 70, 72. *Carson* v. *Boston Elev. Ry.* 309 Mass. 32, 35.    *Hathaway* v. *Checker Taxi Co.* 321 Mass. 406, 411, and cases cited.    *Kuhlen* v. *Boston & No. St. Ry.* 193 Mass. 341, 346.    *Glennen* v. *Boston Elev. Ry.* 207 Mass. 497, 498.    *Holton* v. *Boston Elev. Ry.* 303 Mass. 242, 244–245.

The underlying duty in every case, however, is to exercise the care which the circumstances reasonably require.    *Rawson* v. *Massachusetts Operating Co. Inc.* 328 Mass. 558, 560. *Carson* v. *Boston Elev. Ry.* 309 Mass. 32, 35.    *Fortier* v. *Hibernian Bldg. Assn. of Boston Highlands,* 315 Mass. 446, 447, 450–451, and cases cited.    Restatement: Torts, § 348. The care to be exercised is always proportionate to the dangers to be anticipated.    *White* v. *Checker Taxi Co.* 284 Mass. 73, 76.    Most cases ''present a wide variation in their facts,'' *Rawson* v. *Massachusetts Operating Co. Inc., supra,* and there are probably few categories of cases to which a ''highest care'' rule could rightly be applied.    It may be questioned how far the statement of such rule is helpful, for substantial qualifications are necessary and leave, as the only clear principle, reasonable care in the circumstances.    For example, in carrier cases, the highest degree of care is only that ''consistent with the requirements of the public for speedy and inexpensive as well as safe trans-

portation and with the practical operation of the business.'' *Carson* v. *Boston Elev. Ry.* 309 Mass. 32, 35. The better practice is to refer only to reasonable care with appropriate reference to the circumstances.

The judge did not substantially misstate the law applicable to this case, reading together all that was said as to reasonable care. Hence we pass the issue of whether the business of tavern keeper could justify a general highest care rule as suggested in *Quigley* v. *Wilson Line of Mass. Inc.* 338 Mass. 125, 128–129, with citation of *McFadden* v. *Bancroft Hotel Corp.* 313 Mass. 56, 59–60. In the *McFadden* case however it was deemed ''unnecessary to determine the precise extent of the rule.''

The substance of the requirement to exercise reasonable care to prevent foreseeable harm was stated. The circumstances did call for special care in respect of O'Brien's conduct. As in *Quigley* v. *Wilson Line of Mass. Inc.* 338 Mass. 125, the business included the serving of intoxicants known to make some persons unreasonably aggressive, and the person in charge for the defendant had notice of belligerent and obnoxious acts which could be held to show that more serious action impended. We have already held that an omission to state the highest care rule in a carrier case is not reversible error where the substance underlying it is given, that is, that the jury were to consider that the ''occupants of . . . [the] vehicle . . . [had] no control over its operation and little opportunity for self protection.'' *Hathaway* v. *Checker Taxi Co.* 321 Mass. 406, 411. ''The instructions asked . . . would have added nothing substantial to what had already been said. Essentially the question . . . was the negligence of the defendant . . . on which legalistic refinements would have afforded little or no assistance.'' (*Ibid.,* 412). Here also the basic principles were given, and the addition of the ''legalistic refinements,'' even if not strictly applicable as stated, was not prejudicial.

3. There was no reversible error in the ruling in the course of argument, or in the charge, in respect of damages.

In his closing argument the plaintiff's attorney asserted that "the plaintiff's earning capacity was to be measured by his capacity as a bricklayer and in the water department and that he had an earning capacity of $175 a week." The defendant objected and asked the judge to instruct the jury to disregard this as there was no evidence of the plaintiff's earning capacity as a bricklayer and "no evidence . . . that he ever earned $175 a week." The judge said "I'll take care of it." The defendant excepted to the judge's failure to do so at that time. There was no error; this was in the judge's discretion. *Howes* v. *Grush,* 131 Mass. 207, 211.

In the charge the judge said, "You may consider . . . the loss of earning capacity. The expressions in evidence of values are for you to consider. You are to determine that. Your recollection of the testimony will govern as to what the wages were, whether there were any wages in connection with any bricklaying or in connection with the water department." The defendant excepted "to your Honor's saying that they may consider loss of earning capacity as a bricklayer, as there was no evidence that he had earning capacity as a bricklayer at the time of the accident or what that capacity was or what he would earn."

The plaintiff had testified that he was able to return to his trade as a bricklayer at the middle or the end of May. When asked for whom he worked just prior to the accident he answered "I had a $22,000 job for myself and another fellow for the city of Boston." This answer was struck. To the next question "At the last job you worked before the accident, what was your weekly pay?" he answered "$175 a week," and the defendant's counsel said "I pray your Honor's judgment. We still don't know where he worked. I object." The judge said "You may inquire as to where he worked." Q. (by plaintiff's attorney) "Where was the site of your job?" A. "The addition to the Hyland Street Garage for the city of Boston. And the job was bonded." Q. "And you made $175 a week?" A. "Yes." The defendant's attorney said "I pray your Honor's judg-

ment and ask that be stricken." The judge said, "It may go out." The plaintiff then testified that he worked "forty-eight to fifty hours a week on account of I was supervising that job."

The exception to the charge considered apart from the objection during argument was not well taken. There was evidence of earning capacity as a bricklayer, and in a supervisory capacity (inferentially in connection with bricklaying), and there was precise evidence of earnings of $50.50 a week in a part time job with the water department. In the absence of any request for instructions the judge was not obliged to do more than to refer the jury to their recollection of this evidence which was relevant to impaired earning capacity. *Hall* v. *Weir,* 1 Allen, 261, 262.

The defendant's objection to the plaintiff's argument entitled the defendant to a more specific correction than was given in the judge's charge, if there was in fact no evidence of an earning capacity of $175 a week. *Commonwealth* v. *Richmond,* 207 Mass. 240, 250. *Commonwealth* v. *Domanski,* 332 Mass. 66, 69. But the state of the record did not require a ruling that there was no evidence of an earning capacity of $175.

The first objection to the testimony of $175 was apparently on the ground that the place of work was not stated. The next question and answer supplied that information and the evidence then showed that the plaintiff had earned $175 a week at the Hyland Street Garage. It is not clear how much was intended to be struck on the second objection to the answer affirming $175 a week. Reasons for striking the second reference to $175 would appear to be applicable also to the first answer. But the first answer was not in terms struck. *Bachand* v. *Vidal,* 328 Mass. 97, 102. It was for the defendant to clear the record of the ambiguity in the ruling. *Commonwealth* v. *Hersey,* 324 Mass. 196, 203.

In the circumstances it is not unjust to hold the defendant to the strict rule. Wages earned prior to the injury are admissible as proof of earning capacity and the plaintiff may testify to them. *Murdock* v. *New York & Boston Des-*

*patch Exp. Co.* 167 Mass. 549, 550. *Braithwaite* v. *Hall,* 168 Mass. 38, 39–40. *Bagley* v. *Kimball,* 268 Mass. 440, 441–442. *Doherty* v. *Ruiz,* 302 Mass. 145, 147. *Mitchell* v. *Walton Lunch Co.* 305 Mass. 76, 77–78. Furthermore, the jury on the evidence of a full time bricklaying or supervisory job and a part time job in the water department could have concluded that the plaintiff had an earning capacity in the range of $175 even in the absence of specific evidence of such earnings. "The assessment of damages for such impairment rests largely upon the common knowledge of the jury . . . sometimes with little aid from evidence." *Doherty* v. *Ruiz,* 302 Mass. 145, 147. Although instructions cautioning the jury that evidence of earnings does "not furnish any mathematical valuation of the impairment" (*ibid.*) would have been appropriate, they were not required in the absence of any relevant request for instructions.

4. The exception to "that part of the charge referring to [G. L.] c. 138, § 69,"[1] was bad as too general. *Sylvia* v. *New York, N. H. & H. R.R.* 296 Mass. 157, 164. *Matter of Loeb,* 315 Mass. 191, 195. A reference to the statute was justified by the evidence, particularly by the barkeeper's testimony that he "saw that . . . [O'Brien] was under the influence of liquor," and that he told O'Brien when he ordered a beer "I'm sorry I can't serve you and furthermore you're too young." The judge in substance charged that if they believed the testimony that O'Brien was under the influence of liquor they might consider the statute; that violation of the statute was not conclusive evidence, but might be considered on the issue; and that the test was "whether . . . [they believed] the testimony . . . that O'Brien was being served beer and intoxicating liquor."

Respects in which this charge might or should have been amplified or qualified are argued by the defendant, but do not concern us in the absence of specific request or objec-

---

[1] "No alcoholic beverage shall be sold or delivered on any premises licensed under this chapter to a person who is known to be a drunkard, to an intoxicated person, or to a person who is known to have been intoxicated within the six months last preceding, or to a person known to be supported in whole or in part by public charity."

tion. Nothing told the judge that the defendant wished an instruction on the distinction between the state of being under the influence, and being intoxicated, and on the necessity that the violation be a contributing cause, or that the defendant believed the judge had overstated the evidence as to O'Brien being served intoxicants. *Ristuccia* v. *Boston Elev. Ry.* 283 Mass. 529, 535. *McKnight* v. *Red Cab Co.* 319 Mass. 64, 66–67.

5. It was discretionary with the judge whether to strike the words "boisterous" and "in an arrogant manner" used by witnesses in describing O'Brien's actions. There was other description of what O'Brien said and did. These adjectives had significance in the context. The rule that witnesses in describing conduct should tell what they saw and heard does not foreclose the use of words of summary description. *Cushman* v. *Boston, Worcester & N. Y. St. Ry.* 319 Mass. 177, 179. *Commonwealth* v. *Sturtivant,* 117 Mass. 122, 134–135. *Commonwealth* v. *Borasky,* 214 Mass. 313, 319. *Commonwealth* v. *Bonomi,* 335 Mass. 327, 339. Compare *Hall* v. *Shain,* 291 Mass. 506, 509–511. Trials are not to be delayed and witnesses made inarticulate by too nice objections or rulings as to the use of such descriptive words. Synonyms of "arrogant" include "overbearing" and "blustering." If the jury believed O'Brien was "boisterous" they undoubtedly understood he was "rough," "noisy," or "clamorous."

*Exceptions overruled.*