BRUNO MARRA & others [1] *vs.* BOTTA CORPORATION.

Suffolk. November 5, 1969. — January 5, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Negligence*, Obnoxious person, Bowling alley. *Practice, Civil*, Ordering verdict.

In an action against the operator of a bowling alley by patrons injured in an affray with boys wielding or throwing bottles which began in the bowling area and adjacent canteen of the defendant's building and culminated as the plaintiffs were leaving it in a general melee near the street on which the plaintiffs' automobiles were parked, evidence warranted findings that the defendant's manager, to whom complaints were made and who refused to telephone for police assistance, knew or reasonably should have known that the plaintiffs' safety was endangered at a time when he could have taken protective measures to minimize or avert the danger, that he failed to do so seasonably, with the result that the plaintiffs were assaulted by the boys, and that there was negligence on the part of the defendant toward the plaintiffs. [572]

Where evidence at the trial of an action of tort would have warranted verdicts for the plaintiffs, allowance of the defendant's motion for directed verdicts was error, even though inconsistent statements made by the plaintiffs on cross-examination or in answers to interrogatories or in testimony at a prior criminal trial affected their credibility. [572–573]

TORT. Writ in the Superior Court dated March 29, 1965.

The action was tried before *Paquet*, J.

*Harvey M. Forman* for the plaintiffs.

*George M. Herlihy* for the defendant.

KIRK, J. This is an action of tort in three counts for personal injuries received by the plaintiffs as the result of an assault which occurred while they were leaving the defendant corporation's bowling alley. At the close of the evidence at a trial before a jury, the judge allowed the defendant's motion for directed verdicts. The case is here upon the plaintiffs' exceptions to that action.

We summarize the evidence most favorable to the plaintiffs. *Cain* v. *Southern Mass. Tel. Co.* 219 Mass. 504.

---

[1] Cosmo and John Marra, brothers of Bruno.

*Harvard Furniture Co. Inc.* v. *Cambridge,* 320 Mass. 227, 229. On January 2, 1965, each of the three plaintiffs drove his automobile to the bowling alley operated by the defendant on its leased premises on Brighton Avenue in the Brighton district of Boston, approximately a mile or a mile and a half from the local police station. The plaintiffs' party included the plaintiffs' sister, Josephine Marra, and John Marra's then fiancee, Constance Holbrook. The party entered the bowling alley, where there were twenty-five to thirty people. The party was assigned two lanes by the manager on duty. Shortly after they began bowling, they were disturbed by a group of seven or eight boys sitting behind them who were using foul and abusive language. John Marra spoke to the boys in an attempt to stop the annoyance, and complained to the manager. The manager spoke to the boys who moved away from the bowling area to the adjacent canteen area. Shortly thereafter, Miss Holbrook went to the canteen area to obtain soft drinks for the Marra party. One or two of the same group of boys made "uncomplimentary or suggestive" remarks to her. She complained to the manager about the conduct of the boys, noting that they were not bowling, were drinking, and should be asked to leave. She saw someone drinking what she thought was beer. About one-half hour later, the Marra party paid the manager and began to leave. As they passed through the canteen area, one of the boys in the same group touched Miss Holbrook. She cried out, and John Marra asked the boy who had touched her to apologize. The boy swung at Marra with an empty bottle and struck him on the shoulder. When the boy swung the bottle a second time, Marra, unable to wrest the bottle from him, struck the boy and knocked him down. Further fighting was prevented by the intervention of bystanders. The manager was standing nearby and observed the incident. He was asked by Miss Holbrook and the plaintiffs' sister to call the police in order to prevent further trouble.

The boys in the canteen area then began to take empty soft drink bottles from a disposal rack and leave the build-

ing through the front lobby. The manager advised the Marra party to leave the premises and said he would keep the boys inside to prevent further trouble. The party proceeded toward the exit, but halted when several boys carrying empty bottles ran past them. Miss Marra returned to the manager and again requested that he telephone the police. He refused, saying the boys were his friends and that he did not wish to cause any trouble with the police. Miss Marra then attempted to use a pay telephone in the canteen area, but was prevented from doing so by several boys and girls. The Marra party hesitated for several minutes when about three more boys carrying empty bottles passed them and went out the front door to an entryway which adjoined the sidewalk and which was part of the defendant's leased premises. The plaintiffs and their party finally decided to attempt to leave. The two women opened the front door and had to jostle their way through a number of boys who were standing in the entryway. John Marra followed, and they reached his car at the curb. John reached the driver's side as Miss Holbrook seated herself. Miss Marra, while waiting to enter the car, was brushing snow from the windshield. Bottles were thrown, one hitting near Miss Marra and another at the front of the car. John Marra ran around the front of the car in order to help his sister into the car. He was grabbed by several boys, one of whom was the same boy with whom he had fought earlier. He was pulled back into the entryway of the defendant's premises, and in the struggle was hit on the nose with a bottle. Bruno and Cosmo Marra went to their brother's aid, and a general melee ensued involving all three of the plaintiffs. Josephine Marra ran to a drug store four or five doors away and requested the proprietor to call the police. The fight continued for three or four minutes until the plaintiff Bruno Marra was struck in the eye by a bottle wielded by one of the youths and became unable to see. The fighting then stopped, and immediately thereafter the police arrived.

We agree with the defendant's assertion that the law does

not make it an insurer of the safety of its patrons. We think, nevertheless, that the evidence, as summarized, required that the case be submitted to the jury. The defendant, as the operator of the premises open to the public for business purposes, owed a duty to paying patrons to use reasonable care to prevent injury to them by third persons, whether their acts were accidental, negligent, or intentional. *Rawson* v. *Massachusetts Operating Co. Inc.* 328 Mass. 558. *Carey* v. *New Yorker of Worcester, Inc.* 355 Mass. 450, 452.

There were numerous subsidiary questions of fact which, it seems to us, the jury should have been given an opportunity to consider. Among these were: the place of origin of, and the persons chargeable with, the provocative and annoying conduct and its duration; whether the manager of the defendant had knowledge of it either by personal observation or complaints to him; whether the carrying off of empty bottles by the young men from the premises would, in the circumstances, convey to a reasonable person the ominous threat of impending physical violence to his patrons either on the premises or in the immediate vicinity; whether requests for police protection had been made to the manager, and, if made, whether in the circumstances then known to him or of which he ought to have been aware, those requests should have been heeded. The resolution of these and kindred questions was for the jury, and upon their resolution would depend the determination of the ultimate factual issue: whether the defendant's manager knew or reasonably should have known that the safety of the plaintiffs was endangered by other persons on the premises at a time when he could have taken protective measures to minimize or avert the danger to the plaintiffs, and failed seasonably to take the measures with the result that the plaintiffs were assaulted.

The credibility of the plaintiffs doubtless was affected by inconsistent statements made by them on cross-examination or in answers to interrogatories, or in testimony at a prior criminal trial. The extent to which their credibility was

thereby affected was exclusively the prerogative of the jury to determine and that prerogative could not be preëmpted by the judge in ordering a verdict. *Brown* v. *Metropolitan Transit Authy.* 345 Mass. 636, 638, 640. *Hartmann* v. *Boston Herald-Traveler Corp.* 323 Mass. 56, 59–60.

The defendant does not squarely argue, and we think rightly, that it is relieved of liability merely because some especially violent conduct occurred outside its premises. The evidence warranted, but did not require, a finding that the affray was a continuing one which began on the premises and spilled over to the street, accompanied by an indication that the young men were bent on further violence against the plaintiffs. It did not require a finding that the "street fight" was a separate, independent combat, deliberately resolved upon and carried out by the young men without the knowledge or awareness of the defendant's agents of their purpose.

Although the sale or use of intoxicating liquors has incidentally been a factor in many of the cases of this type which have recently come before us, neither is, in principle or in law, as the defendant appears to argue, an indispensable ingredient of the plaintiff's case. Compare *Rawson* v. *Massachusetts Operating Co. Inc.* 328 Mass. 558, with *McFadden* v. *Bancroft Hotel Corp.* 313 Mass. 56, *Quigley* v. *Wilson Line of Mass. Inc.* 338 Mass. 125, *Kane* v. *Fields Corner Grille, Inc.* 341 Mass. 640, and *Carey* v. *New Yorker of Worcester, Inc.* 355 Mass. 450.

*Exceptions sustained.*