AARON GORDON, PLAINTIFF-APPELLEE, v. CHARLES F. BLACKTON, DEFENDANT-APPELLANT.

Submitted October 11, 1935—Decided August 27, 1936.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the defendant-appellant, *Collins & Corbin* (*Edward A. Markley* and *Patrick F. McDevitt,* of counsel).

For the plaintiff-appellee, *Aaron Gordon* (*John W. Ockford,* of counsel).

The opinion of the court was delivered by

TRENCHARD, J. This is defendant's appeal from plaintiff's judgment, entered by the judge sitting without a jury, based upon defendant's failure to honor an execution against wages.

Plaintiff has a judgment and execution against one Findlay, an employe of the Erie Railroad Company, which execu-

tion was not honored. Hence this suit. The substantial question is whether the employe's wages are exempt under the federal statute. Appellant contends they are and appellee contends that they are not.

We think that the wages of Findlay, a seaman engaged in the coastwise trade, are not exempt from execution.

It appears that Findlay, the judgment debtor, was and is employed either as "captain or mate" on a tugboat of the Erie Railroad Company which plies in and about the Hudson river, both in the North river and East river branches thereof, along both sides of the river and crossing the river from New Jersey to New York and Brooklyn and *vice versa.* The Hudson river and its two branches, the North river and East river, are navigable and are a part of New York harbor. He was and is, therefore, engaged in the coastwise trade. The cases support this conclusion. Some of these are: *Ravesies* v. *United States, 37 Fed. Rep.* 447; *Leary* v. *Jersey City,* 189 *Id.* 419; *Gibbons* v. *Ogden, 9 Wheat. (U. S.)* 1; *Pacific Milling Co.* v. *Portland,* 133 *Pac. Rep.* 72. Thus in the case of *Gibbons* v. *Ogden, supra,* Chief Justice Marshall said: "The coasting trade is a term well understood. The law has defined it; and all know its meaning perfectly. The act describes, with great minuteness, the various operations of a vessel engaged in it; and it cannnot, we think, be doubted, that a voyage from New Jersey to New York, is one of those operations." In the Ravesies case it was said that the words "coasting trade" and "coastwise trade" were used synonymously. In *Leary* v. *Jersey City, supra,* it was stated that "a harbor is a port or haven for ships, a sheltered recess in the coast line of a sea, gulf, bay, or lake, most frequently at the mouth of a river * * *." In *Pacific Milling Co.* v. *Portland, supra,* it was declared that "the word 'sea' has been held to mean 'not only high-sea, but arms of the sea, waters flowing from it into ports and havens, and as high upon rivers as the tide ebbs and flows.'"

Now Findlay, being engaged in the coastwise trade (and we assume as a seaman) cannot claim the exemption allowed seamen because, as appellee contends, section 544 of the *U. S.*

*Code Title* 46, expressly takes seamen engaged on vessels in the coastwise trade out of the exemption and in fact limits section 601 to seamen engaged between east coast, west coast or foreign trade. *Duggar* v. *Mobile and Gulf Co.,* 140 *So. Rep.* 611, 614 (two decisions); *Inter-Island Co.* v. *Byrne,* 239 *U. S.* 459; 36 *S. Ct. Rep.* 132; 60 *L. Ed.* 382. Such was the conclusion reached in those cases after a discussion and consideration of the exemption originally given by act of congress June 7th, 1872, section 61 (17 *Stat.* 276) to wages due to seamen, in view of the Act of Congress June 9th, 1874. 18 *Stat.* 64; 46 *U. S. C. A.,* § 544. And we believe those cases amply support appellee's contention as to the limitation placed by section 544 on section 601. A complete recital of the historical development of the two sections and interpretive decisions is furnished by the court in the Duggar case, 140 *So. Rep.* 611. The earlier history is explained in *Wilder* v. *Inter-Island Navigation Co.,* 211 *U. S.* 239, and *Inter-Island Co.* v. *Byrne, supra.*

In the Duggar case the Court of Appeals of Alabama, by the decision rendered October 27th, 1931, reviewed the entire history of legislation which culminated in sections 544 and 601 of United States Code. The plaintiff in that suit sought to garnishee the wages paid by the Mobile and Gulf Navigation Company to one Tindel, judgment debtor, Tindel being employed by the navigation company· as a pilot or mate on one of its vessels or tugs plying on the Alabama river and Mobile river. The navigation company set forth section 601 as its basis for refusing to honor the execution. The court held that section 544 above mentioned, limited the application of section 601 to seamen engaged in coast to coast or United States to foreign port trade and hence held the garnishment was effective as against the wages of Tindel whose employment did not fall within the class of seamen engaged in coast to coast or United States to foreign port trade. The exact basis of the decision is correctly set forth in the headnote thus: "Seamen engaged in ordinary coastwise or river trade are not entitled, under 46 *U. S. C. A.* 601, to the exemption originally given by Act Congress June 7th, 1872, section 61

(17 *Stat.* 276) to wages due or accruing to any seaman or apprentice, since Act Congress June 9th, 1874 (18 *Stat.* 64; 46 *U. S. C. A.,* § 544), subsequently passed, provided that none of the provisions of the previous act should apply to sail or steam vessels engaged in the coastwise trade, with specified exceptions, and the limitation, as well as the original exemption, was preserved in revisions, and was carried forward into the codification known as the United States Code, after decisions had construed the exemption as not applying to wages of seamen engaged in ordinary coastwise trade." That decision is precisely in point here.

The only other point made by the appellant is that the evidence failed to show that Blackton was the proper defendant to this suit, in that the statute provides for a suit against the agent or any other proper officer.

We see no merit in this point.

This action was instituted pursuant to chapter 204 of laws of 1924, section 12 (page 432), a supplement to the District Court act. That section discloses that it applies not only to an individual, but to a corporation which is, or may become, indebted to a judgment debtor, and it provides in the case of such a corporation that "it shall be the duty of any \* \* \* agent, treasurer, or other fiduciary officer \* \* \* to whom said execution shall be presented" to pay over under the execution; and "if such \* \* \* or the proper officer \* \* \* to whom said execution shall be presented shall fail or refuse to pay \* \* \* he shall be liable to an action therefor by the judgment creditor \* \* \*."

It will be seen thereby that the act merely requires service of the writ on "agent, treasurer or other fiduciary officer of a \* \* \* corporation" and if such a one to whom the execution is presented shall fail or refuse to pay, he shall be liable.

Now the evidence tended to show that Blackton is the agent of the Erie Railroad Company as head of its marine department, the department in which Findlay, the judgment debtor, was employed. Blackton was the man to whom the constable was directed by the superintendent of the Erie

terminal when he went to serve the writ. Findlay's pay checks cleared through Blackton's hands; he was Findlay's boss; he was served with the execution and accepted service. The defendant Blackton was the person designated by the principal official at the Erie terminal in Jersey City to receive the writ. The treasurer and principal disbursing officer of the Erie Company ratified the service as being correct by acknowledging such service and acting with respect thereto. Neither the superintendent, nor Blackton himself, nor the treasurer of the Erie Railroad raised any question of the propriety of the service, but both Blackton and the treasurer declined to honor the execution alleging as their only reason therefor that the wages of Findlay were exempt from execution.

We conclude that the defendant Blackton was the proper defendant and was liable to the judgment creditor.

The judgment will be affirmed, with costs.