**A. BELANGER SONS, INC., Plaintiff**

v.

**LLOYD A. FRY ROOFING COMPANY, Defendant.**

**Civ. A. No. 56–1082.**

United States District Court
D. Massachusetts.

Jan. 4, 1962.

Edgar L. Kelley, Boston, Mass., for plaintiff.

Herbert B. Ehrmann, Boston, Mass., Raya S. Dreben, Boston, Mass., for defendant.

CAFFREY, District Judge.

This is an action of contract which, prior to the recent amendment of 28

1957); aff'd. 252 F.2d 441 (4thCir. 1958), and 121 A.L.R. 1294 et seq.

U.S.C.A. § 1331 raising the jurisdictional amount in diversity cases from $3,000 to $10,000, was removed to this Court from the Superior Court of Middlesex County, Massachusetts. Plaintiff, a Massachusetts corporation, seeks to recover $6,312.57, plus interest, from defendant, an Illinois corporation, upon the basis of an alleged breach of express warranty.

The facts which gave rise to this litigation are as follows:

Plaintiff secured a contract under which it was to waterproof a group of buildings, described by witnesses as underground concrete boxes, located at various NIKE sites around the perimeter of the City of Boston. The plaintiff was a subcontractor and under the contracts between the Government and the general contractors with whom plaintiff had its various subcontracts, plaintiff was required to submit for Government inspection samples of the asphalt waterproofing material it planned to use in the performance of its contracts. This asphalt was required to meet a Government specification identified as SS–A–666, Type 3. Because of the Government's interest in expediting the construction of NIKE sites and the buildings thereon, the Government engineer in charge of testing materials submitted by contractors and subcontractors elected to waive actual examination of the samples submitted and, instead, allowed the work to proceed upon the submission by the subcontractors of a certificate from the manufacturers of the materials they contemplated using to the effect that the materials ordered for the construction of these jobs did, in fact, meet Government specifications.

After plaintiff had been awarded its subcontract to do the waterproofing work at various NIKE sites, particularly those located in Burlington, Needham, and the Blue Hills section of Milton, plaintiff requested and received from defendant a certificate that the asphalt which plaintiff had already ordered from Herrick Company, a distributor of defendant's products, did in fact meet Spec-

ification SS–A–666. Thereafter, plaintiff entered on the performance of its duties and eventually completed the waterproofing of some 10 structures at various NIKE sites.

A few days before the Army was scheduled to take occupancy of the NIKE site at Burlington, which plaintiff had completed on or about April 25, 1955, it was discovered that there were 2 or 3 inches of water on the floor of several of the waterproofed structures. Plaintiff was called upon by the general contractor on this particular job, Eugene R. Eisenberg, of Eugene R. Eisenberg, Inc., to immediately correct this water situation. Plaintiff corrected the situation by work done on the inside of the structures and thereafter submitted a claim for extras in the amount of $1232.03 to Eisenberg who, in turn, forwarded this claim to the Corps of Engineers. The Corps of Engineers refused to pay the claim, and, acting through one Israel Davidson, Government engineer in charge of the Burlington project, caused samples to be taken from drums of asphalt being used by plaintiff on other NIKE sites and turned the samples over for testing to Skinner & Sherman, Inc., an independent testing laboratory.

Section F. of Specification SS–A–666, which was offered in evidence as Defendant's Exhibit C, is entitled "Methods of Sampling, Inspection, and Tests," and contains specific and detailed directions for the process to be followed in taking samples to be tested. It is obvious from a reading of this section that the intent and purpose of Section F. was to insure that a sample taken would be representative of the mass of material being supplied under a contract. On the stand Mr. Davidson testified, in substance, that Section F. was not complied with in several important particulars in the taking of the samples which were tested. I find that by reason of this noncompliance with the prescribed method of taking a sample, and in the absence of any evidence that plaintiff caused any tests to be made which tended to establish a breach of warranty,

that plaintiff has failed to satisfy me that the two lumps of asphalt tested by Skinner & Sherman, Inc., were representative of the mass, and, consequently, plaintiff has failed to establish that there was in fact a breach of warranty as to the materials used on the job.

Even assuming in plaintiff's favor that the samples tested were representative of the mass of material supplied by defendant to the Herrick Company, its local distributor, and resold by Herrick to the plaintiff, plaintiff has failed to show any causal relation between the assumed breach of warranty and the leakage which occurred in 3 of the 10 buildings waterproofed by plaintiff. Plaintiff called as its expert at the trial Mr. Robert A. Sullivan, Chemical Director, for Skinner & Sherman, Inc. Mr. Sullivan testified, in substance, that he applied six different tests to the samples, that the samples passed four of the six tests, and failed by a slight margin to pass the remaining two tests. Mr. Sullivan then expressed the opinion that the failure of the samples to meet the specifications to the extent that he found same, he felt *did not* cause the leakage. Mr. Sullivan went on to say that he was of the opinion that the leakage was caused by either water pressure, settling, or vibration, but that it could not be established objectively unless the structures were excavated from the outside, which was not done.

In addition to the damage done to plaintiff's case by the testimony of its own expert, Mr. Walter Belanger, Vice-President of the plaintiff corporation, testified that he was of the opinion that the leakage was caused by a faulty procedure followed by the general contractor in pouring the concrete slab which formed the floor of these buildings. Mr. Belanger testified at length that the fact that the cement was dropped from a height of 18 feet above the concrete slab floor caused most of the stone in the cement to settle, thus producing a honeycomb effect in the concrete which, in turn, caused the leakage. Thus, plaintiff's own witnesses have adduced only evidence that the breach of warranty, assuming there was one, was not the cause of the leakage in the NIKE sites.

Because of plaintiff's failure to prove breach of warranty, or causal relation between a breach of warranty and the leakage, it becomes unnecessary to consider whether or not plaintiff introduced any evidence of consideration moving from it to defendant to support the alleged express warranty contained in defendant's letter to plaintiff dated August 30, 1954, stating, in substance, that the Mopping Asphalt met Specification SS-A-666, Type 3, having in mind that defendant sold the asphalt to Herrick Company which resold it to plaintiff and that there appears to be no contractual relation between plaintiff and defendant.

Judgment for the defendant.