**Virginia T. GILLENTINE, Plaintiff, Appellee,**

v.

**Maxwell N. McKEAND et al., Defendants,**

**Lawrence Moore, Defendant, Appellant.**

**No. 7445.**

United States Court of Appeals, First Circuit.

Heard March 2, 1970.

Decided May 22, 1970.

John E. Lecomte, Boston, Mass., with whom Princi & Lecomte, Boston, Mass., was on brief, for defendant-appellant.

H. Erik Lund, Boston, Mass., with whom Thomas D. Burns, John A. Donovan and Burns & Levinson, Boston, Mass., were on brief, for plaintiff-appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

In 1967 the plaintiff entered into negotiations with defendant Moore for the purchase of a yacht known as the MOORING. She wished to time charter [1] the vessel for several months each year as a profit-making venture. An offer to purchase was made subject to satisfactory survey by marine surveyors. The defendants McKeand and Litchfield were engaged to survey the vessel and its engines and, upon their report that only relatively minor repairs were required, plaintiff bought the MOORING for $23,300. The bill of sale contained a warranty that the vessel was "free and clear of all * * * encumbrances of any nature or kind * * *." [2]

Plaintiff took possession of the vessel in Quincy, Massachusetts, and set out for Fort Lauderdale, Florida. A short time out of port engine trouble developed and, without reciting the rather lengthy details, it became apparent in the succeeding weeks that the vessel was

---

[1]. A time charter *is*, in essence, a lease of the vessel under which the owner provides the captain and crew, who remain subject to the owner's control. It is opposed to a bareboat charter, under which the vessel is leased without a crew.

[2]. The warranty, in full, is as follows:
"The seller further warrants that the said vessel is free and clear of all liens, bills, mortgages, taxes or encumbrances of any nature or kind and hereby agrees to indemnify and save harmless the purchaser against and from any and all claims arising by reason of anything happening or occurring prior to date hereof and all expenses in connection therewith."

in extremely poor physical and mechanical condition. Moreover, plaintiff learned that the vessel had at one time been under Cuban registry, a fact which she claims prevented her from time chartering the yacht as originally intended.[3]

Plaintiff brought suit against McKeand, Litchfield and Moore. The gravamen of the counts against McKeand and Litchfield, pleaded both in tort and in contract, was that their survey of the vessel was deficient. The count against Moore was based on the warranty, the theory being that the alleged statutory restriction on the use of the vessel for time charter purposes was an encumbrance. The jury returned verdicts of $500 against McKeand, $250 against Litchfield, and $25,000 against Moore. Moore appeals.

I

Defendant's first contention is that the court erred in denying his motions to dismiss for failure to state a cause of action and for want of the requisite jurisdictional amount. The affidavit of a yacht broker, stating his view that the value of the MOORING was unaffected by the charter restriction, was submitted with the motion.

■ We deal first with the jurisdictional amount. A motion to dismiss on that ground will be granted only if it appears to a legal certainty that plaintiff cannot recover at least $10,000. Loew's Drive-In Theatres v. Park-In Theatres, 174 F.2d 547, 549 (1st Cir.), cert. denied, 338 U.S. 822, 70 S.Ct. 68, 94 L.Ed. 499 (1949). This is patently not such a case.

■ The motion to dismiss for failure to state a claim was converted into a motion for summary judgment by the submission of the affidavit and the court's acceptance thereof, Fed.R.Civ.P. 12(b), and raised three issues. First, did 46 U.S.C. § 883 (Supp. IV., 1969) apply to and restrict the use of the MOORING?[4] Second, was there a genuine issue of fact as to whether such a restriction was included in the warranty? Finally, was there a genuine issue of fact on the question whether the plaintiff was damaged by the breach of warranty?[5]

We first take up the applicability of § 883.[6] The main clause of the section plainly did not restrict plaintiff in time chartering the yacht for pleasure purposes, as such a charter would not have involved the carriage of merchandise. The first proviso, however, is not expressly limited to the carriage of merchandise and does appear to prevent time chartering for pleasure purposes, as we think the term coastwise trade is

---

3. Plaintiff's claim is that 46 U.S.C. § 883, cl. 2 (Supp. IV, 1969), and regulations thereunder, 19 C.F.R. §§ 3.2(f), 4.80 (1969), prevent her from time chartering the vessel because a time charter is considered to be coastwise trade.

4. The same issue, in a sense, was raised by defendant's objection to the court's submission of this very question to the jury. The interpretation and applicability of the statute is a question of law and therefore a matter solely for the court. Its submission to the jury was error. Since we hold that the statute was applicable, however, the error was harmless, as the jury resolved that question in the affirmative.

5. Defendant concedes that the vessel was once of foreign registry. Accordingly, if the statute applies to the MOORING and the restriction was within the terms of the warranty, there was, a fortiori, a breach of the warranty.

6. In relevant part, § 883 is as follows: "No merchandise shall be transported by water * * * between points in the United States * * * in any other vessel than a vessel built in and documented under the laws of the United States and owned by persons who are citizens of the United States, or vessels to which the privilege of engaging in the coastwise trade is extended by section 13 or 808 of this title: Provided, That no vessel having at any time acquired the lawful right to engage in the coastwise trade * * * and later sold foreign in whole or in part, or placed under foreign registry, shall hereafter acquire the right to engage in the coastwise trade * * *."

broad enough to include such activity.[7] The question, then, is whether the proviso was intended merely to qualify the main clause or to have independent force. If the former is true, the proviso only applies to merchandise-carrying vessels; if the latter, it applies to all vessels. The plaintiff takes the position that the proviso has independent force and prevented her from making the use of the vessel that she intended.

■ In support of her position, plaintiff introduced in evidence a letter from the Chief of the Merchant Vessel Documentation Division of the Coast Guard which states that any document issued to the MOORING, due to § 883, would bear an endorsement prohibiting the vessel's use in the coastwise trade. Likewise, 19 C.F.R. §§ 3.2(f) and 4.80 (1969),[8] taken together, embody the view of the Bureau of Customs that the proviso bars a renationalized vessel from carrying passengers, a restriction which covers the type of charter plaintiff intended. Thus, the agencies charged with the enforcement of the statute[9] have concluded that the proviso was intended to have an effect independent of the main clause of § 883. Such a construction "should be followed unless there are compelling indications that it is wrong."[10]

■■ The legislative history of the proviso provides no basis for disagreement with the executive construction. The proviso was adopted in 1935[11] for the purpose of protecting American vessels then engaged in the coastwise trade from potential competition by foreign vessels that had been built in the United States and might have been returned to American ownership.[12] There is no evidence that Congress considered the precise question now before us. And since the adoption of the executive construction giving the proviso independent effect is perfectly consistent with the statutory purpose, we are bound by that interpretation.

■ Coming to the scope of the warranty, it is clear that there was an issue of fact on the question whether it covered the restriction on use. Where the meaning of a term of a contract does not appear unambiguously from the instrument, its interpretation is a matter for the jury.[13] Defendant's contention

---

7. *See, e. g.,* Shannon v. Streckfus Steamers, Inc., 279 Ky. 649, 131 S.W.2d 833 (1939); Gordon v. Blackton, 117 N.J.L. 40, 186 A. 689 (1936); North River Steam Boat Co. v. Livingston, 3 Cow. 713, 747 (N.Y.1825); *cf.* Op.Atty Gen., 1925 A.M.C. 304 (1924).

8. 19 C.F.R. § 3.2(f), in relevant part, is as follows: "No vessel of classes 1 through 8 above [which includes the MOORING] which has acquired the lawful right to engage in the coastwise trade * * * shall have the right to engage in such trade if it thereafter has been sold or transferred foreign in whole or in part or placed under foreign registry * * *. When a vessel has lost its coastwise privileges, no document shall be issued for the coastwise trade and any document which may be issued to such vessel for any other trade shall bear the following notation: 'As amended by section 27 of the Merchant Marine Act of June 5, 1920, as amended [46 U.S.C. § 883]. This vessel shall not engage in the coastwise trade.' "

19 C.F.R. § 4.80, in relevant part, is as follows: "No vessel shall transport any *passenger* or merchandise between points in the United States embraced within the coastwise laws * * * unless it is: (1) Owned by a citizen * * * and is so documented under the laws of the United States as to permit it to engage in the coastwise trade * * *." (Emphasis supplied).

9. 46 U.S.C. § 2 (1964).

10. Red Lion Broadcasting Co. v. FCC, 395 U.S. 367. 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969).

11. Act of July 2, 1935, 49 Stat. 442.

12. S.Rep. 870, 74th Cong., 1st Sess. (1935); H.R.Rep. 118, 74th Cong., 1st Sess. (1935).

13. *See, e. g.,* Rizzo v. Cunningham, 303 Mass. 16, 20, 20 N.E.2d 471 (1939).

that the warranty against encumbrances went only to claims against the seller's title is belied by the existence in the bill of sale of warranties against all liens and to defend the vessel against any claims whatsoever. Since each term is to be given meaning where possible, the term "encumbrances" arguably includes the restriction here at issue, since the other warranties amply cover claims against the seller's title.

 Defendant's claim that the broker's affidavit conclusively negated plaintiff's claim of damages as a result of any breach of warranty is also without merit. To begin with, an affidavit going to a question of value is merely an expression of opinion and does not negate the existence of an issue of fact on a motion for summary judgment.[14] Secondly, the affidavit went only the question of the difference in the yacht's value as warranted and as delivered, whereas plaintiff's principal reliance was placed on her loss of charter revenues.[15] Accordingly, the motion for summary judgment was properly denied.

## II

This brings us to defendant's contentions that the district court erroneously denied his motions for a directed verdict, made at the close of the plaintiff's case, and for judgment n. o. v. The bases for the motions were that the restriction on the yacht's use was not, as a matter of law, an encumbrance and, assuming it was, that plaintiff had failed to adduce sufficient evidence of damages flowing from the restriction to go to the jury. At the outset, however, we are met with the argument that defendant's contentions are foreclosed by his failure to move for a directed verdict at the close of all the evidence. Defendant counters this contention by claiming that action by the district court,[16] in light of our decision in Bayamon Thom McAn, Inc. v. Miranda, 409 F.2d 968 (1st Cir. 1969), preserved these issues for appeal.

 While in the case at bar the trial court made statements rather similar to those in *Thom McAn*, the defendants here, after the plaintiff rested, proceeded to examine six witnesses extensively and introduced four exhibits, taking the better part of two trial days. *Thom McAn* recognized that in some instances the evidence introduced by the defendant could not conceivably alter the court's decision on a motion for a directed verdict. As that was true in *Thom McAn*, we felt that the defendants there could be relieved of the consequences of the trial court's misleading statements without doing violence to the policy of the expiration rule. Where, however, the defendant's evidence is substantial—as is the case here[17]—it may well change the sufficiency of the

---

14. *Duane v. Altenburg*, 297 F.2d 515, 518 (7th Cir. 1962); 3 W. Barron & A. Holtzoff, Federal Practice and Procedure § 1237, at 164–165 (C. Wright ed. 1958).

15. The difference in value is not the only measure of damages in case of a breach of warranty. In appropriate circumstances "proximate damages of a different amount" may be recovered. Mass. Gen.Laws Ann. ch. 106, §§ 2–714(2), 2–715(2) (a) (1958); De Rose v. Hunter Lindsay Corp., 41 N.J.Super. 178, 124 A.2d 349 (1956) (difference in value need not be an element of recovery).

16. At the close of plaintiff's case, defendant moved for a directed verdict. The court did not rule on the motion, expressly reserving decision. At the close of all the evidence the court told defendant's counsel that it would "let this go to the jury under the most clearly reserved thing, this question, whether it was an encumbrance, and if it was, whether this makes an end run around it. There are two legal points for me on the count against Moore."

17. It is immaterial that defendant limited himself to cross-examination of witnesses called by other defendants. Evidence supplied by cross-examination is no different from that adduced on direct.

plaintiff's case. In such circumstances, a motion for a directed verdict at the close of the plaintiff's case does not raise the question of the applicability of the law to substantially all the evidence. Moreover, the court's purported reservation of questions of law at the close of all the evidence, note 16, *supra*, is of no effect for two reasons. First, there was no motion pending upon which the court could reserve decision. Second, the questions which it purported to reserve did not go to the sufficiency of the evidence, the issue now sought to be raised by defendant. Accordingly, defendant's motion for a directed verdict at the close of plaintiff's evidence expired upon the introduction of defense evidence, the case was submitted to the jury unconditionally, and defendant can not now be heard to challenge the sufficiency of the evidence.

### III

The defendant also objects to the court's charge to the jury on the issue of damages.[18] The court instructed the jury that, if it found a breach of warranty, the plaintiff was entitled to recover the difference in the value of the vessel as warranted and as delivered; the expenses incurred in maintaining the yacht between the time of purchase and the time of sale; and the reasonable return plaintiff would have received had she been able to time charter the vessel. The defendant claims error in four respects: (1) there was no evidence to support instructions on the difference in the value of the yacht as warranted and as delivered; (2) the allowance of all expenses incurred which would not have been incurred but for plaintiff's purchase of the vessel permit-

ted the jury to assess damages for repairs for which defendant was not liable; (3) the failure to include plaintiff's living expenses as deductions from the gross charter revenue in arriving at the net charter revenue permitted excessive recovery, and (4) the court erroneously failed to instruct the jury on mitigation of damages despite defendant's request for such an instruction. We need not, however, consider points (2) and (3) as the defendant failed to object to the court's charge on those points.[19]

Defendant is correct in saying that the submission of an instruction to the jury which is unsupported by the evidence is error.[20] And we agree that in this case there was no evidence from which the jury could reasonably have concluded that defendant's breach of warranty proximately caused a difference between the value of the MOORING as accepted and the value it would have had if it had satisfied the warranty.

Taking the evidence most favorable to the plaintiff, the market value of the vessel was $23,300, assuming that it satisfied the warranty. Plaintiff's expert testified that the scrap value of the vessel shortly after its purchase was $8,000 to $10,000. The vessel was eventually sold for $11,100. From this plaintiff would have us conclude that there was sufficient evidence to support a finding on the difference in value standard.

The difficulty with this position is that it entirely overlooks the dramatic effect of the vessel's physical and mechanical condition on the valuations. Plaintiff bought the yacht on the as-

---

18. The objection to submission to the jury of the issue of the application of the regulations under § 883 has been disposed of. Note 4, *supra*.

19. Fed.R.Civ.P. 51. Objection to one part of the charge does not permit defendant to assert error as to a different part; nor may objection on one ground serve as a predicate to a challenge on another.

2B W. Barron & A. Holtzoff, Federal Practice and Procedure § 1104. at 460–461 (C. Wright ed. 1961).

20. *See, e. g.*, Friese v. Boston Cons. Gas Co., 324 Mass. 623, 630–631, 88 N.E.2d 1 (1949); Womble v. Dubuque Fire & Mar. Ins. Co., 310 Mass. 142, 148–149, 37 N.E.2d 263 (1941).

sumption that it was in relatively good repair and required but $1,000 worth of attention. On any reading of the evidence this assumption was entirely unfounded. The testimony of plaintiff's expert on the value of the yacht, while it implicitly took account of the restriction on use, went entirely to the physical defects in the vessel, their obviousness to careful surveyors, and the costs of effecting repairs. He was never asked to assess the effect of the restriction on the vessel's value and it is clear that his opinion of its value was based upon the condition of the yacht. Indeed, he stated that the vessel would be worth $25,000, if repaired, despite the restriction. Plaintiff, therefore, failed to produce any evidence to indicate that there was any effect on the vessel's value as a result of the restriction. Since any difference in value, to be recoverable, must be a proximate consequence of the breach of warranty,[21] there was insufficient evidence to support the instruction.

▬▬▬ Despite our agreement that submission on the difference of value standard was error, we must still determine whether that error was prejudicial.[22] Where the court erroneously submits an element of recovery to the jury the error is not reversible where the amount of the verdict makes it clear that the jury did not base its findings upon the erroneous ground.[23] This, however, is not the case here. It was undisputed that the plaintiff incurred maintenance expenses of approximately $10,000. The jury therefore needed to find an additional $15,000 of damages to arrive at the verdict of $25,000. And while there was evidence from which the jury could have concluded that plaintiff suffered a $15,000 loss as a result of her inability to time charter the yacht, it is equally possible that the verdict was based on a supposed difference in the value of the yacht as accepted and as warranted. In light of this possibility, we are compelled to reverse and order a new trial on the issue of damages, there being no reason to disturb the jury's finding that defendant committed a breach of warranty.[24]

Reversed and remanded for proceedings consistent with this opinion.

21. A. Belanger Sons, Inc. v. Lloyd A. Fry Roofing Co., 201 F.Supp. 171, 173 (D. Mass.1962).

22. *Cf.* cases cited note 20, *supra*.

23. Snelling v. Dine, 270 Mass. 501, 508 (1930).

24. In view of this result, we need not consider the alleged inconsistency in the verdicts against the co-defendants. It is plain that the jury found for the plaintiff and against each defendant as to liability and there is no inconsistency to that extent. Since defendant will get a new trial as to damages, any inconsistency in the amounts of the verdicts is now immaterial. We add, for the benefit of the court on remand, that the failure to charge on mitigation of damages was incorrect. A party injured by a breach of contract must take reasonable steps to put himself in as good a position as he would have enjoyed had the contract been fulfilled. *See, e. g.*, Hall v. Paine. 224 Mass. 62, 65, 112 N.E. 153 (1916). Moreover, an instruction must be given on a material issue if requested and supported by evidence. *See* Morse v. Fall River Line Pier, Inc., 345 Mass. 681, 686, 189 N.E.2d 512 (1963); Kane v. Fields Corner Grille, Inc., 341 Mass. 640, 646, 171 N.E.2d 287 (1961). Here there was ample evidence from which the jury might have concluded that it was reasonable for plaintiff to bareboat charter the MOORING, which is permissible under the regulations, and that such a course would have substantially reduced her loss of charter revenues. Moreover, there was evidence which could have supported a finding that plaintiff could have cut her losses by accepting an earlier offer to sell the vessel or by actively seeking to dispose of it.