JAVELIN INVESTMENT, S.A.,
Plaintiff, Appellee,

v.

MUNICIPALITY OF PONCE,
Defendant, Appellant,

Junta Administrativa, Muelles
Municipales De Ponce,
Defendant, Appellee.

JAVELIN INVESTMENT, S.A.,
Plaintiff, Appellee,

v.

MUNICIPALITY OF PONCE,
Defendant, Appellee,

Junta Administrativa, Muelles
Municipales De Ponce,
Defendant, Appellant.

Nos. 79–1466, 79–1535.

United States Court of Appeals,
First Circuit.

Submitted Oct. 10, 1980.

Decided April 9, 1981.

Rehearing Denied April 29, 1981.

H. Febus Bernardini, Antonio Zapater Cajigas, and Agustin Diaz Garcia, Ponce, P. R., on brief, for defendant, appellant.

Etienne Totti Del Valle and Laffitte & Dominguez, Hato Rey, P. R., on brief for plaintiff, appellee, Javelin Investment, S. A.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Javelin Investment, S.A., sued the Municipality of Ponce and the Junta Administrativa, Muelles Municipales de Ponce[1] for breach of a contract which called for the storage of approximately 2000 metric tons of the chemical poly vinyl chloride. Defendants appeal from the district court's judgment entered upon a jury verdict in favor of Javelin, and from its denial of their post trial motions.

The basic facts are undisputed. In the early part of 1976 Javelin entered into an agreement with the Rico Chemical Company to purchase from it large amounts of the chemical for investment purposes. Because the market price of this product was low, Javelin sought, with the assistance of an employee of Rico Chemical, a suitable storage location within the vicinity of Ponce, Puerto Rico. A warehouse owned by the Municipality and operated by the Board proved to be the most desirable and conve-

nient location. In the latter part of June 1976 a meeting was had between Harry K. Eldon, an agent for Javelin, and Aldio Alvarado, the superintendent of the Municipal Docks, to discuss the availability of space at this warehouse and the applicable rates. Alvarado was at first unsure of what storage rate would apply and quoted the normal demurrage rate. Eldon informed him that this rate was not competitive. However, they agreed to meet the next day and ended their discussion with Alvarado indicating that he would look into the possibility of setting a more agreeable rate. When they met the next day Alvarado mentioned that the warehouse could be leased at the same rate for which sugar was stored—two cents per one hundred pounds for fifteen days. This rate was accepted by Eldon. The only condition set by Alvarado at this time was to the effect that he would need to have some type of confirmation from the Board. No specific length of time was set on the agreement but Eldon told Alvarado that while there was a likelihood the chemical would be sold within six months, it might have to be stored for ten or twelve months. This second meeting ended with Alvarado stating that he would inform Eldon if the confirmation could be had. None of the specifics of this second meeting were ever reduced to writing. A short time later Alvarado informed the same employee of Rico Chemical who had assisted Javelin in finding the warehouse that the storage agreement had been confirmed; the employee in turn notified Eldon. The first loads began arriving at the warehouse in July 1976. For the next six months Javelin was billed and made payments at the agreed rate without any significant difficulty.

In February 1977, after the appointment of a new Board and Superintendent, Hector M. Leon, Javelin was informed that the rates being paid for the storage were inadequate and that new rates would become effective immediately. When Javelin ob-

[1]. The Junta Administrativa, Muelles Municipales de Ponce [Administrative Board, Municipal Docks of Ponce] (hereinafter "Board") is charged with managing, operating and conserving the Ponce Municipal Docks. It is an entity distinct and separate from the Municipality.

jected to the new rates Eldon and Leon met to discuss the disagreement. The meeting between the two produced no settlement to the dispute—Eldon insisted that the Board had to honor the agreement made by Alvarado and Leon insisted that he was bound to charge the correct applicable tariff as he understood it. Javelin paid the higher rates under protest and subsequently withdrew and sold all the product stored in the warehouse. It then initiated the present suit claiming a breach of contract and seeking to recover for all losses sustained in the forced premature sale of the product.

Appellants raise several issues on appeal: (1) that the jury erred in finding the existence of a contract because Alvarado had no legal authority to contract in the name of the Board and no evidence was presented that the Board had ratified Alvarado's action; (2) that any contract which did exist was contrary to law[2] and thus void and imposed no obligation; (3) that the award of damages was excessive and unsupported by the evidence; (4) that the award of damages erroneously included the amount paid by Javelin as demurrage charges which were imposed pursuant to applicable tariffs; and (5) that the award of damages was calculated in part on erroneously admitted evidence. After briefing and submission of the appeal appellants have also asked to have this case certified to the Supreme Court of Puerto Rico for an interpretation of section 16, note 2, *supra.*

■ We find the first two issues not properly preserved for appellate review. Accepting appellants' statement as to the applicable law, namely, that Alvarado's agreement required ratification by the Board and that section 16 is applicable, both issues concern claims that the evidence was insufficient as a matter of law to allow recovery. Under the first issue the question is whether plaintiff's evidence was sufficient to find that the Board had ratified the agreement. Under the second issue the question is whether the evidence was sufficient to overcome the proscriptions of section 16. Both arguments should have first been presented to the district court by a motion for a directed verdict. The failure to do so barred consideration of this claim in a post verdict motion for judgment n.o.v. Rule 50(b), Fed.R.Civ.P. It now precludes consideration of such a claim on appeal. *Martinez Moll v. Levitt & Sons of Puerto Rico, Inc.,* 583 F.2d 565, 568 (1st Cir. 1978); *LaForest v. Autoridad de Las Fuentes Fluviales,* 536 F.2d 443, 445 (1st Cir. 1976); *Gillentine v. McKeand,* 426 F.2d 717, 722–23 (1st Cir. 1970); 5A Moore's Federal Practice ¶ 50.08 (2 ed. 1980). We note, moreover, that appellants do not here claim that the jury was wrongly instructed on the law nor

**2.** Appellants contend that section 16 of the Dock and Harbor Law of Puerto Rico, 23 Laws of P.R.Ann. § 396 (1979 Supp.) is applicable to this case. This statute provides in part:

The owners, lessees, or manager of any pier, wharf, or bulkhead, shall not be permitted to use them for the permanent storage of goods, merchandise, cargo or material of any kind which may be discharged or placed for loading. Every structure of this character is designed for the protection of merchandise or to expedite its loading and unloading in transit, and all cargo deposited therein shall be removed within the five (5) working days following the date on which same was discharged or placed for loading.

Provided, that in the case of piers, wharves or bulkheads the property of the Ports Authority, said Authority, for just cause, as determined by the Economic Development Administrator, and in the case of piers, wharves or bulkheads which are operating as public service enterprises or the property of the municipality of Ponce, the operator of the public service pier or the Superintendent of the pier of Ponce, respectively, may, for just cause as determined by the Public Service Commission of Puerto Rico, extend the time and permit in cases of necessity the storage in not over one-fourth of the space covered or not occupied by streets or means of communications. In the case of piers, wharves or bulkheads the property of or operated by private enterprises or property of the municipality of Ponce, there shall be charged for the delay incurred in removing the cargo or merchandise a tariff that shall be fixed by the Public Service Commission and in the case of piers, wharves or bulkheads the property of the Ports Authority a tariff that shall be fixed by the Economic Development Administrator. In either case the amount of the tariff shall constitute a lien on the merchandise, goods, cargo or material the object of the delay.

did they object to the instructions as would be required by Fed.R.Civ.P. 51 as a predicate to their raising such a contention on appeal. Although it may be that on this record plaintiff would have fallen short of adequately meeting any exception under section 16, we do not find this to be a case of "plain error" or that type of "exceptional" case where noncompliance with Rule 50(b) should be overlooked. *See Martinez Moll v. Levitt & Sons of Puerto Rico, Inc.,* supra at 569–570; *Morris v. Travisono,* 528 F.2d 856, 859–60 (1st Cir. 1976). We do not consider the legal or factual issues involved to be complex.[3] The section 16 prohibition against "permanent storage" is, moreover, not absolute on its face, and from the record we are unable to tell whether plaintiff would still have been unable to establish an exception to the statute had it been alerted to the issue by timely motion.

Appellants next contend that it was error to award damages in this case because none were proven, the award was based on erroneously admitted evidence and the demurrage charge was properly imposed. The jury's original verdict awarded plaintiff $120,000. As a consequence of appellants' motion for a new trial the district court reduced this award to $78,571.18, and this reduction was accepted by plaintiff on remittitur. The district court arrived at this figure by allowing as proven damages only that amount charged for storage which was in excess of the original verbal agreement ($40,814.18), and the difference between the price originally paid for the poly vinyl chloride and the price for which it was ultimately sold ($37,757.00). Appellants' motion for a new trial appropriately preserved its complaint as to the excessive award of damages. *See LaForest v. Autoridad de Las Fuentes Fluviales, supra* at 446.

■ We do not agree with these contentions. Assuming, as we must, that plaintiff established the existence of a valid contract, we cannot say the amount of damages, as reduced on remittitur, are excessive. *See LaForest v. Autoridad de Las Fuentes Fluviales, supra* at 447. The evidence presented was sufficient to establish that the breach of the agreement resulted in the premature sale of the product and that this caused a loss on the investment. This evidence clearly established the initial purchase price of the product (which was below the market price then prevailing); the little change in the market price during the period between the date plaintiff delivered the first loads to the warehouse and the date it was notified of the increased rates; and most important, that a short time after the product was sold, but still within the maximum twelve month period discussed, the market price went up approximately two cents a pound.[4] *Cf. AMECO v. Jaress Corp.,* 98 P.R.R. 820, 824–827 (1970) ("[t]he indemnity for losses and damages includes not only the amount of the loss which may have been suffered, *but also that of the profit which the creditor may have failed to realize*") (emphasis in original). We are unpersuaded by appellants' argument that plaintiff did not attempt to mitigate its loss by immediately removing the poly vinyl chloride in February of 1977. Evidence was presented to the effect that plaintiff began the search for buyers as early as March 1977 and that the product was removed as soon as sales agreements with these buyers were finalized. There is nothing to indicate that immediate removal would have reduced the losses. Lastly, insofar as we accept a contract existed, appellants' imposition of a demurrage charge in excess of the earlier agreed upon rate was a breach of that contract and excess payments were properly recoverable.

---

3. Since appellants' procedural shortcoming below prevents them from raising the question of whether or not section 16 is a legal bar to recovery, we of course, have no reason to consider certifying that or any related question to the Supreme Court of Puerto Rico.

4. This would be equivalent to an increase of approximately $40,000 figured on the overall amount. It can, thus be inferred that had plaintiff been allowed to keep the chemical in storage for the balance of the period, it would have been able to sell at a price above that which it purchased it for, rather than at a $37,757 loss.

Appellants' final argument is the claim that plaintiff's exhibit 20, which was used to compute the loss of profit, was erroneously admitted into evidence. Exhibit 20 is a one page summary of the invoices which show the price for which the poly vinyl chloride was sold. Appellants dispute its admissibility under Rule 1006, Fed.R. Evid.[5] We doubt the need for a summary. Plaintiff conceded that it was poorly prepared and contained at least one error. Moreover, there were only two buyers and three invoices. The other evidence summarized in exhibit 20, which demonstrated the cost of freight, insurance and other handling expenses, consisted only of another seven documents. All were simple, short and straightforward. These ten pages together are not the type of "voluminous writings . . . which cannot conveniently be examined in court." *See* 4 *Wigmore, On Evidence*, § 1230 at 535 (Chadbourn rev. 1972). We find, however, no prejudice. Fed.Rule 61 Fed.R.Civ.P.; Rule 103(a) Fed. R.Evid; 28 U.S.C. § 2111. The originals, of which exhibit 20 was a summary, were attached to this exhibit and submitted to the jury. Further, the disparity which existed between the summary and the freight charges (which appear out of place in the summary) was pointed out and corrected during trial testimony.

*The judgment of the district court is affirmed and the request for certification is denied.*

---

5. Rule 1006 provides: "The contents of voluminous writings, recordings or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court."