**BESTWAY EQUIPMENT SERVICES, INC., Plaintiff, Appellant,**

v.

**BERWIND LINES, INC., Defendant, Third Party Plaintiff, Appellee,**

v.

**CARIBE TUG CORPORATION, Third Party Defendant, Appellee.**

No. 80–1788.

United States Court of Appeals, First Circuit.

Argued June 1, 1981.

Decided July 17, 1981.

Henry R. Stoinski, Woodbury, N.J., for plaintiff, appellant.

Jose A. Fernandez Paoli, Santurce, P. R., for third party defendant, appellee Caribe Tug Corp.

Andres R. Nevares Gonzalez, San Juan, P. R., for defendant, third party plaintiff, appellee Berwind Lines, Inc.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

BREYER, Circuit Judge.

In this diversity action, appellant, Bestway Equipment Services, Inc., sued Berwind Lines, Inc. in the federal district court for Puerto Rico alleging: (1) that Berwind kept fifty trailers that belonged to Bestway; (2) that Berwind had not paid Bestway rent that it owed for the lease of fifteen other trailers; and (3) that Berwind had not paid Bestway for trailer repairs that were Berwind's responsibility. Berwind, in turn, sued Caribe Tug Corporation

as a third party defendant on the second claim, for Caribe Tug had taken over Berwind's lease and had assumed any resulting liability. A jury found against Bestway on all claims. Bestway appeals. After reviewing the record, we find no appealable error and affirm the judgment of the district court.

## I.

Bestway sold, leased and repaired truck trailers—commercial trailers pulled by a truck tractor used to haul goods. Berwind, a trucker, needed equipment and approached Bestway in 1972. It is undisputed that in September 1972 Berwind and Bestway entered into a written lease. Under the lease Bestway rented fifty "dry" (non-refrigerated) trailers for thirty-six months at a rental of $70 per month per trailer. The lease specifically states that Berwind "acknowledges that at all times during the term of this lease, the title to and ownership of the vehicles . . . shall remain" in Bestway and that Berwind "does not by these presents acquire any title or proprietary rights therein." The lease adds that at its termination Berwind is to return all the trailers to Bestway in the same condition as when leased subject to ordinary wear. And, the lease states that "there are no agreements, understandings or representations between the parties hereto not embraced herein." Despite this language, Berwind did not return the trailers to Bestway. Rather, it kept them while offering Bestway $1 per trailer.

Berwind's defense is that there existed a separate oral agreement that, at the termination of the lease, Bestway would sell the trailers to Berwind for $1 each. The evidence of this separate agreement consisted, first, of the testimony of Hugh McComas, a former Berwind executive, who said that it was his intention to create a "lease-purchase" arrangement with Bestway. He said that the "$1 purchase" part of the agreement was deliberately not put in the lease so that Berwind's auditors would not capitalize the lease's value. He added that he instructed his vice-president, Mr. Robeson, to negotiate a lease purchase in this form. This evidence was followed by the testimony of another Berwind executive, John Forsythe, who said that he saw Robeson hand a specific document to Harold Burger, the president of Bestway. The document, which was admitted into evidence, is a Berwind purchase order, which states:

| Quantity | Description |
|---|---|
| 50 ea. | Dry Highway Van Trailers on Rental/Purchase for a period of 36 months, commencing when delivered, at the rate of $70.00 per Van, per month. At the end of the 36 months period, in each case, title will pass to Berwind Lines, Inc. with payment of $1.00 per Van. Price specified above includes one ea. paint job per Van during the life of ea. Van while on rental. |

Although Burger denied the existence of a separate oral agreement to sell the trailers at the end of the lease term, this evidence would ordinarily be sufficient to leave the question to the jury. On appeal, however, for the first time Bestway argues that Puerto Rico's parol evidence rule forbids the jury to consider Berwind's evidence of the oral sale agreement.[1] Best-

---

1. 32 L.P.R.A. § 1668, which provides:

> When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore, there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreements other than the contents of the writing, except in the following cases:
>
> 1. Where a mistake or imperfection of the writing is put in issue by the pleadings.
>
> 2. Where the validity of the agreement is the fact in dispute.

> But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates . . . or to explain an extrinsic ambiguity, or to establish illegality or fraud. . . .

Puerto Rico amended its parol evidence rule in 1979 when it adopted the Rules of Evidence of Puerto Rico. Law No. 180 of July 20, 1979. However, as a rule of contract law, the law in effect at the time the lease agreement was entered into, 1972, governs. *See Maryland-National Capital Park & Pl. Comm. v. Lynn*, 514 F.2d 829, 833 (D.C. Cir. 1975).

way adds that without this evidence of an oral agreement, the jury must, as a matter of law, conclude, given the terms of the written lease, that Bestway owns the trailers.

We reject Bestway's argument because it was not raised in the district court. Bestway did not object to any testimony or exhibits on grounds of "parol evidence". It did not object to McComas' testimony. It objected to Forsythe's testimony on grounds of hearsay and lack of qualification to identify the purchase order (which Mr. Forsythe saw Mr. Robeson hand to Mr. Burger). The district court correctly overruled these objections. If the issue is one of the admission of evidence, any objection now is barred. Rule 103(a)(1) Federal Rules of Evidence. *Chalamidas v. Sierra Life Ins. Co.,* 632 F.2d 1381, 1384–85 n.2 (10th Cir. 1980).[2]

■ Bestway also claims that the district court's instruction on this subject was inadequate. The court instructed:

Whenever the parties to a contract reduce their agreement to writing and the writing is apparently complete, a presumption arises that that is the whole of that agreement. When parties accept a document, which is a contract, there arises a presumption that all of the parties intended to be bound by its terms. You are instructed further, that an oral contract has the same validity in law as a written contract. That an oral contract is binding among the parties to such a contract and that the standard of evidence that is required to prove another contract is a preponderance of the evidence and that no higher standard of proof is required in such a case. In other words, the standard of proof in reference to a written contract and/or an oral contract is the same. A party in a contract, whether it be written or oral, is obliged to comply with all of the terms and conditions that are stipulated in that contract.

There is no record of any objection to this instruction. In fact, after the court gave it, Bestway's counsel was asked whether he had "any further record to make on the Court's instructions," to which he replied, "No, sir." Thus, no parol evidence objection based upon the jury instruction has been preserved. Fed.R.Civ.P. 46, 51; *Monomoy Fisheries, Inc. v. Bruno & Stillman Yacht Co.,* 625 F.2d 1034, 1036 (1st Cir. 1980).

■ Bestway also argues that it can raise the parol evidence point now because it is a rule of substantive law, not a rule of evidence. Hence, it claims, failure to object below is not fatal. *See United States v. Croft-Mullins Electric Co.,* 333 F.2d 772 (5th Cir. 1964), *cert. denied,* 379 U.S. 968, 85 S.Ct. 664, 13 L.Ed.2d 561 (1965) (appellate court may properly find that prior or contemporaneous oral conversations and negotiations, though admitted without objection in a judge-tried case, are simply immaterial and irrelevant to the question of what the agreement was); 4 *Williston on Contracts* § 631 (3d ed. 1961). Even were we to follow this authority, however, Bestway could not prevail. If its claim is that the remaining competent evidence was insufficient to support the jury's verdict, it should have asked the district court for a directed verdict. It did not do so and that failure bars consideration of any such issue of contract law on appeal. *See Martinez Moll v. Levitt & Sons of Puerto Rico, Inc.,* 583 F.2d 565, 568 (1st Cir. 1978); *LaForest v. Autoridad de Las Fuentes Fluviales,* 536 F.2d 443, 445 (1st Cir. 1976); *Gillentine v. McKeand,* 426 F.2d 717, 722–23 (1st Cir. 1970); 5A *Moore's Federal Practice* ¶ 50.08 (2d ed. 1980). Even if Bestway were to claim that the mere presence of this parol evidence both is forbidden by substantive contract law and led the jury to an improper outcome, it would still have had to protest any instruction allowing the jury to consider the evidence at a time when corrective measures could have been taken.

2. Any contention that it was, as an evidentiary matter, plain error under Fed.R.Evid. 103(d) to admit the evidence of a separate agreement is foreclosed by our holding, *see infra,* that Bestway cannot now challenge, as a substantive matter, the jury's ability to consider such evidence.

Finally, this is not a case where, despite lack of objection, this court should reverse the judgment, under the plain error rule, *Sibbach v. Wilson & Co.*, 312 U.S. 1, 16, 61 S.Ct. 422, 427, 85 L.Ed. 479 (1941). No miscarriage of justice would occur if the jury verdict stands. The parol evidence rule of Puerto Rico, as interpreted by the Puerto Rico Supreme Court, is a liberal rule which does not often stand in the way of proving a related oral agreement. *Rossy v. Tribunal Superior*, 80 PRR 705 (1958) (parol evidence rule does not preclude proof to show what was the real transaction between the parties); *Alvardo v. Bonilla*, 86 PRR 464 (1962) (parol evidence rule cannot be used to suppress truth or to preclude testimony of the true transaction contemplated in deed of sale even if that appears to be different from that stated in writing); *see also Rolon Marrero v. Rivera Malave*, 85 PRR 703 (1962). The commentators also recommend a liberal interpretation.[3] Indeed, to allow parol evidence here would not defeat the purpose of the written lease, for a purchase at the end of a lease is not inconsistent with a lease agreement.

We affirm the judgment of the district court on this claim.

## II.

On May 5, 1975, Bestway separately leased fifteen refrigerated trailers to Berwind for twenty-four months at a monthly rental of $425 per trailer. Berwind used them to carry food to Virgin Island supermarkets. Ten months later, in March 1976, Berwind assigned its lease to Caribe Tug Corporation, the third party defendant. Caribe assumed responsibility for the fifteen refrigerated trailers and agreed to hold Berwind harmless for all resulting liabilities.

Bestway claims that the assignment violated the lease, for the lease specifically states that it is not assignable without Bestway's prior written approval. Bestway also claimed that it found the trailers abandoned and in disrepair throughout the island. Its president, Harold Burger, testified that he contacted Caribe, that Caribe did not make clear what it intended to do, that Burger therefore began to repair the trailers, to use them, and to keep a log crediting the value of its use against rent due under the lease.

Caribe introduced evidence that Bestway accepted rental payments from Caribe in March, April and May 1976, thereby acquiescing in the lease assignment. It adds that Burger's contacts with Caribe constituted further evidence of acquiescence. It introduced additional evidence that, while it was paying rent between March and May 1976, Bestway took the trailers and used them in competition with Caribe to supply food to the Virgin Islands.

Our reading of the record convinces us that it was correctly left to the jury to decide which witnesses to believe. Whether Bestway acquiesced in an assignment of the lease to Caribe, whether Bestway itself

---

**3.** Consequently, the jury instructions appear sound. Corbin notes the following:

Transactions between two parties sometimes follow each other in rapid succession; and it is not always easy to decide whether they have made one complex contract or two successive contracts. If the parties have reduced to writing one of two such successive parts, leaving the other part unwritten, it is usually possible to prove the latter by parol evidence. If it is a separate contract, the "parol evidence rule" has no application to the case. Even if it is not reasonably to be described as a separate contract, it is very likely to be called one in order to prevent the exclusion of parol testimony. Generally, this result can equally well be reached by holding that the unwritten part is such that a prudent man might be expected to leave it out of the writing and that there is no complete written integration.

If the part not reduced to writing consists of a promise given for its own separate consideration, it may properly be called a separate contract; and even if not so regarded, the "parol evidence rule" should never be applied so as to exclude proof of such a promise and separate consideration. If, on the other hand, the part that is not written consists of a collateral promise that is supported by no consideration other than that expressed in the writing, it should seldom be described as a separate contract, but it should be enforced on the ground that the writing was not a complete integration of agreement.

3 *Corbin on Contracts* § 594, at 564–67 (Rev. ed. 1960) (footnotes omitted).

breached the lease by taking control of the trailers, or whether Bestway justifiably took control to mitigate damages, are matters upon which reasonable jurors might differ. We therefore affirm the judgment below which rests upon a jury verdict that "neither side shall recover anything from the other side."

### III.

Bestway's final claim rested upon its assertion in its complaint and in Mr. Burger's deposition that Berwind owed it $3,659.21 for repairs that Bestway made to several of the fifty *dry* trailers that Berwind leased in 1972 (described in part I of this opinion). Bestway claimed that it made these repairs and that Berwind agreed to pay for them in a separate oral agreement. At trial Berwind pointed out that the repair bills did not refer to dry vans. Mr. Burger then changed his testimony and stated that the bills were for repairs to different trailers. The record reveals that this claim raised issues of fact and credibility properly left to the jury. The jury's decision for the defendant is well within the bounds of reason.

*Affirmed.*